COMMONWEALTH *vs.* CHARLES MOSBY.

Suffolk. September 10, 1980. — December 12, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Practice, Criminal,* Argument by prosecutor, Admissions and confessions, Fair trial, Instructions to jury, Comment by judge. *Constitutional Law,* Admissions and confessions. *Evidence,* Sexual conduct. *Rape Shield Statute. Rape. Unnatural Sexual Intercourse.*

At a rape trial, the prosecutor's argument regarding the defendant's alleged silence at the time he was arrested and confronted with the complainant's accusation was prejudicial error where there was evidence that the defendant had said something at the time of the confrontation, where the defendant had an absolute right to remain silent because he was in custody at the time, and where the prosecutor had successfully initiated the exclusion of testimony regarding the defendant's statements at the time of the confrontation [6-9]; and the judge's curative instructions which merely emphasized that the case should be decided on the evidence rather than on the arguments were not sufficient to cure the prejudice created by the prosecutor's comments [9-11].

Discussion of the scope of permissible questioning under the rape shield law, G. L. c. 233, § 21B. [12-16]

At a rape trial, the complainant's testimony that the defendant "put his mouth to . . . [her] vagina" and that he "put his mouth down below" was sufficient to support a finding that there was an act of unnatural sexual intercourse within the meaning of G. L. c. 265, § 22. [17-18]

At a rape trial, the testimony of three witnesses that the complainant was wearing a black nightgown or camisole following the incident, which was contradicted by the testimony of the complainant and a police officer to the effect that she was wearing pants, a top, and a coat, did not require a directed verdict of not guilty. [18-19]

INDICTMENTS found and returned in the Superior Court Department on April 17, 1979.

The cases were tried before *Ronan, J.*

*Brownlow M. Speer* for the defendant.

*Robert L. Cooperstein*, Assistant District Attorney (*M. Catherine Huddleson*, Legal Assistant to the District Attorney, with him) for the Commonwealth.

BROWN, J. The defendant appeals from his convictions by a jury in the Superior Court of breaking and entering a building in the daytime with intent to commit rape and larceny (G. L. c. 266, § 17), and of two counts of rape (as newly defined in G. L. c. 265, § 22, as appearing in St. 1974, c. 474, § 1).

The defendant raises five claims of error. He argues (1) that the prosecutor's reference, in closing argument, to an alleged silence on the part of the defendant at the time he was arrested and confronted with the complainant, was improper; (2) that the prosecutor's additional comment, in closing argument, to the effect that once the complainant had recovered her stereo set, she could have "dropped the complaint if she was not telling the truth" about the rape, was also improper; (3) that the trial judge erred in excluding certain testimony under the "rape shield law," G. L. c. 233, § 21B; (4) that the judge's criticism of the defendant's trial counsel prejudiced the defendant's position in the eyes of the jury; and (5) that the evidence was insufficient to support a conviction of any of the offenses charged.

We agree with the defendant as to his first argument and hold that the prosecutor acted improperly in referring to the defendant's alleged silence at the time of his arrest and confrontation. Accordingly, we reverse the judgments of conviction and remand for a new trial.[1]

---

[1] As to the defendant's other claims of error, it appears that the defendant failed to preserve the issues by objection. See Mass.R.Crim.P. Rule 22, 378 Mass. 892 (1979). For guidance, however, we briefly address the issues raised in these arguments insofar as they may have relevance on retrial.

At trial, the prosecution's case consisted mainly of testimony by the complainant and the two police officers who arrested the defendant. As brought out in their testimony, the basic facts of the incident were as follows.

At the time of the incident, the complainant resided with her four children in an apartment on the third floor of a building at the Bromley Heath housing project in Jamaica Plain. She had lived there for about five years and knew most of the people in the building.

The complainant knew the defendant because he had previously come to her apartment to visit her sister, who had lived with the complainant until approximately a year before the incident. The complainant testified that the defendant had never come to the apartment since her sister had left, but that she had seen him around the neighborhood since that time.

On the afternoon of Saturday, March 10, 1979, the complainant was at home with her children. She testified that no one else had been there that day. At about 3:30 or 4:00 P.M., she heard a knock at the door. She did not know who was there but she went to the door and unlocked it. When the person outside pushed the door open, she saw that it was the defendant. He forced his way into the living room, put his arm around her throat from behind, and began choking her. He warned her not to scream. The defendant held her in that position for some time.

The complainant's children were in the bedroom watching television, and the defendant told her to bring the children and the television out into the living room. He released her, and she did so.

The defendant then led the complainant into the bedroom. He told her to take off her pants and underpants, which she did. The complainant testified that the defendant then "put his mouth to . . . my vagina," and later "inserted his penis in my vagina." Thereafter, the defendant came out of the bedroom, took the complainant's stereo set from the living room, and left the apartment with it.

The complainant then put her clothes back on and went down to the second floor apartment of Ruby Avinger, a

close friend of hers at that time. She told Avinger and her ten-year-old daughter Natalie what had happened, and Avinger called the police. The complainant and Avinger then went downstairs to try to find the defendant. On the stairs they ran into Milton Boyd, another neighbor, and had a brief conversation with him. They then proceeded toward another building in the housing project, where they believed the defendant was living.

At that point, two police officers arrived and the complainant told them what had happened and where they were going. The officers then proceeded to an apartment in a nearby building. There they found the defendant. Both officers drew their service revolvers. One of them instructed the defendant to put his hands on the wall of the entryway of the apartment and then patted him down for weapons. In the apartment the police found a stereo matching the description the complainant had given them.

The police brought the defendant and the stereo outside, where the complainant and Boyd were waiting. The complainant identified the defendant and the stereo. The police then placed the defendant in the cruiser and took him to the station. The complainant was subsequently taken to a hospital for examination.

The defendant's case consisted of testimony by Avinger, her daughter Natalie, and Boyd. Their testimony contradicted the complainant's story in the following respects.

Natalie testified that she had seen the defendant in the complainant's apartment at least once since the complainant's sister had moved out. She also testified that on the afternoon in question she went to the complainant's apartment to tell her she had a telephone call in the Avingers' apartment. When the complainant opened the door, Natalie saw the defendant sitting on the couch. After receiving the message, the complainant sat back down with him briefly before coming downstairs.

Natalie and her mother both testified that later that afternoon the complainant had come to their apartment a second time saying that she had been raped, and that at that time

she was wearing a "black nightgown" under a raincoat. This testimony regarding the complainant's attire was consistent with that given by a nurse who interviewed the complainant at the hospital following the incident.

Boyd testified that he knew both the complainant and the defendant, and that sometime that afternoon (it is unclear when) he went to the complainant's apartment. He testified that the defendant answered the door for him and that they had a brief conversation. He did not see the complainant there at that time.

In addition, defense counsel made a number of attempts during the examination of several witnesses to bring out further facts regarding the relationships between the complainant and the defendant and between the complainant and Boyd. These examinations, and other facts, are discussed as relevant, *infra*.

1. *Prosecutor's comment on the defendant's "silence."*

At trial, the two arresting officers testified that when they found the defendant, they brought him before the complainant, who identified him, saying "That's him. That's the man who raped me." On cross-examination, the defendant brought out the fact that after the officers "took Mr. Mosby into custody," he made certain statements. One was something to the effect of, "You've got the wrong guy." Another was, "She's full of shit. I have known her for eighteen months." On redirect, however, one of the officers testified that the defendant did not make these statements at the time when the complainant identified him, but only after he had been placed in the cruiser, which was ten or fifteen minutes after the time he was first apprehended.

Thereafter, the defendant attempted to establish that he had not been silent at the time of the confrontation but rather had made some response in the face of the complainant's accusations. Defense counsel asked Avinger, "Did you hear [defendant] say anything when he was arrested?" The prosecutor immediately objected and the question was excluded. The defendant later asked Boyd the same question. Boyd replied in

the affirmative, but the follow up question ("And what did he say?") was excluded on objection by the prosecutor.

In closing argument, the prosecutor drew the jury's attention to the officer's testimony regarding the defendant's statements, and reminded the jury of the testimony as to the time they were made.[2]

The defendant urges that the prosecutor's argument was grossly improper. We agree. It is quite clear from the transcript that the prosecutor, in this portion of his argument, was inviting the jury to draw the inferences (1) that the defendant was, in fact, silent in the face of the complainant's accusations, and (2) that such silence was evidence of his guilt and his consciousness thereof.

a. The argument made here by the Commonwealth assumes, as its premise, the fact that the defendant stood mute when confronted with the accusations of the complainant. In fact, the only testimony on this point is to the contrary. As set out above, Boyd testified that he heard the defendant say something at the time of the confrontation, although he was not allowed to go on to testify as to what the defendant actually said.

"It is, of course, beyond dispute that a prosecutor commits error when he uses closing argument to argue or suggest

---

[2] The transcript of this part of the argument reads as follows:

"I suggest to you that it's important to remember that . . . they were driving back in the cruiser, I believe the officer's testimony was, it was at that time when the defendant made the statement relative to knowing her for two years, or whatever . . . . Certainly a statement saying he didn't do it. When did he make that statement? I believe the officer testified fifteen or twenty minutes after he had him up against the wall, in the hallway . . . . He makes that statement fifteen or twenty minutes later. He's had time to think."

Defense Counsel: "Objection, Your Honor."

Prosecutor: "And before that time, ladies and gentlemen, police officer's testimony that he was face to face with the victim, . . . , and she said 'That's the man who raped me, broke into my apartment.' Did he say anything then, ladies and gentlemen?"

Defense Counsel: "Objection, Your Honor. . . . That question was objected to and excluded."

The Court: "Stay away from it. I will cover that subject in the charge."

facts not previously introduced in evidence." *Commonwealth v. Storey*, 378 Mass. 312, 324 (1979). See also S.J.C. Rule 3:22A, PF 13(a), 14, 377 Mass. 927 (1979) (effective March 1, 1979). Given Boyd's testimony that the defendant did say something at the time of the confrontation, the prosecutor's argument that the defendant was silent is unsupported by the record and amounts to a clear misstatement of the evidence. See *Commonwealth v. Nordstrom*, 364 Mass. 310, 315-316 (1973).

b. Even if the testimony fully supported the prosecutor's assertion that the defendant was indeed silent in the face of the complainant's accusations, the prosecutor could not properly have argued to the jury that such silence constituted evidence of the defendant's guilt. Cf. *Commonwealth v. Hall*, 369 Mass. 715, 733 (1976), and cases cited; Fed.R. Evidence 512(a). We pass, as inapposite to our analysis, the question whether this was an adoptive admission, compare *Commonwealth v. Morrison*, 1 Mass. App. Ct. 632, 634 (1973), and cases cited, because the record clearly shows that, at the time of the confrontation, the defendant was "in custody" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), and thus had an absolute right to remain silent.[3] *Id.* at

---

[3] The transcript does not reveal when the police formally placed the defendant under arrest. However, a suspect is considered to be "in custody" when he has been "deprived of his freedom of action in any significant way." *Commonwealth v. Haas*, 373 Mass. 545, 551 (1977), citing *Miranda v. Arizona*, 384 U.S. at 444. Here, the officers testified that when they found the defendant in the apartment, they drew their guns, put him "up against the wall," and patted him down for weapons. One of the officers also testified that he may have put the handcuffs on the defendant at that time, although he was not sure. See *Commonwealth v. Cobb*, 374 Mass. 514, 518 (1978). From that point forward, the defendant was no longer free to leave voluntarily. See *Commonwealth v. Cruz*, 373 Mass. 676, 683-684 (1977). Given all this, and the fact that the police efforts were already tightly focused on the defendant, *Commonwealth v. Haas*, 373 Mass. at 553, it is evident that the defendant was "in custody" from the time the police apprehended him in the apartment. The defendant therefore had a right to remain silent at the time of the confrontation, whether or not the police actually informed him of that right, and there is nothing in the transcript to indicate that this right was waived in any way. See *Commonwealth v. Cobb, supra.*

467-468. It is elementary that if the right to remain silent is to have real practical force, it cannot be burdened by prosecution comments which cast aspersions upon its exercise. It is for this reason that a prosecutor may not draw adverse inferences from a defendant's failure, at trial, to testify or present evidence in his own behalf. See, e.g., *Commonwealth v. Gouveia,* 371 Mass. 566, 570-571 (1976); *Commonwealth v. Smallwood,* 379 Mass. 878, 891 (1980). And it is for the same reason that a prosecutor may not argue to the jury that a defendant's silence, at the time of his arrest, constitutes evidence of his guilt. *Commonwealth v. Cobb,* 374 Mass. 514, 520-521 (1978). See *Commonwealth v. Brant,* 380 Mass. 876, 886-887 (1980).

In the present case, the prosecutor referred the jury to the complainant's face-to-face accusations of the defendant and asked the jury, "Did he say anything then, ladies and gentlemen?" This argument is virtually indistinguishable from the one made by the prosecutor in *Commonwealth v. Haas,* 373 Mass. 545, 559 (1977), and the court's discussion of the argument there is fully applicable here. Therefore, even if the record supported the premise that the defendant was silent at the time of the confrontation, the inference of guilt which the prosecutor sought to build on that premise would still constitute improper argument as a violation of the defendant's right to remain silent under *Miranda* v. *Arizona, supra.* See *Doyle* v. *Ohio,* 426 U.S. 610, 633-635 (1976) (Stevens, J., dissenting).

c. The third and perhaps strongest factor which contributes to the impropriety of the prosecutor's argument in this case involves a matter of simple fairness in the conduct of the defendant's trial. Cf. *Commonwealth v. Nordstrom,* 364 Mass. at 316.

When the defendant sought to elicit testimony from Milton Boyd and Ruby Avinger regarding the content of the defendant's statements at the time of the confrontation, the prosecutor objected and successfully had the questions excluded. Having initiated the exclusion of the defendant's statements, the prosecutor acted improperly in arguing that

the defendant stood silent in the face of the complainant's accusations. See S.J.C. Rule 3:22A, PF 13(a), 14, *supra.*

If it is improper for a prosecutor to comment on evidence excluded at the defendant's request, *Commonwealth* v. *Burke,* 373 Mass. 569, 575 (1977); see *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 418-419 (1978), it is particularly improper for a prosecutor to call the jury's attention to an absence of evidence when the absence is a result of the prosecutor's objection to the introduction of that evidence. On this point, we think it is sufficient to point out that a party's success in excluding evidence from the consideration of the jury does not later give that party license to invite inferences (whether true or, as in this case, false) regarding the excluded evidence. Cf. *Commonwealth* v. *Burke, supra.* See also *Harris* v. *New York,* 401 U.S. 222, 225-226 (1971); *Oregon* v. *Hass,* 420 U.S. 714, 723 (1975); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 691-697 (1975), cert. denied, 425 U.S. 959 (1976).

In sum, we think it is clear that the prosecutor's argument regarding the defendant's "silence" at the time of the confrontation was error, and in the circumstances of this case it was highly prejudicial error. We are mindful of the "jurors' natural tendency to infer guilt from a failure to deny guilt." *Commonwealth* v. *Cobb,* 374 Mass. at 520. Moreover, this is hardly a case in which the subject of the improper argument was only remotely or collaterally related to the ultimate issue of guilt. Compare *Commonwealth* v. *Hawley,* 380 Mass. 70, 84 (1980), with *Commonwealth* v. *Donahue,* 369 Mass. 943, 952, cert. denied, 429 U.S. 833 (1976). Therefore, "[w]e cannot overestimate the effect on the jury of . . . [the] argument tending to show consciousness of guilt on the part of the defendant." *Commonwealth* v. *Cobb, supra* at 521.

d. Having decided that the prosecutor's argument on this topic was improper (contrast *Commonwealth* v. *Fitzgerald,* 376 Mass. at 419, and cases cited), and that its effect on the jury was likely to be unduly prejudicial, we turn to the question whether the judge's instructions were effective to cure the prosecutor's error.

Following the prosecutor's closing, the defendant submitted a request for a "cautionary instruction" which specifically dealt with the prosecutor's comments on the defendant's "silence." The judge then charged the jury, cautioning generally that the arguments of counsel are not evidence. However, the judge made no specific reference to the prosecutor's improper comments and did not give the cautionary instruction requested by the defendant. Following the charge, counsel for the defendant approached the bench and asked the judge to "note my objection to not giving that cautionary instruction." After some discussion, the judge then agreed to give the instruction requested by the defendant "as given." Instead, however, the judge gave an extemporaneous instruction which mainly repeated that the case was to be decided "on the evidence, not on anything said in the arguments."

The defendant argues that the judge's supplementary instruction on this point was insufficient to cure the prejudice created by the prosecutor's comments. Viewing the supplementary instruction in light of the entire charge, *Commonwealth* v. *Sellon*, 380 Mass. 220, 234 (1980), we are constrained to agree, for several reasons.

We pass over the fact that the judge did not instruct the jury to disregard the prosecutor's improper comments at the time they were made. But see *Commonwealth* v. *Hawley*, 380 Mass. at 85 ("The preferred action . . . would have been to charge the jury then and there"). When given, the supplementary instruction consisted mainly of several repetitions of the judge's earlier instructions that the case should be decided on the evidence rather than on the arguments. In the circumstances of the present case, where the prosecutor's comments asserted against the defendant such highly prejudicial evidence as an admission, we do not think that such general warnings "went far enough in emphasizing the particulars in which the prosecutor's argument was grossly improper." *Commonwealth* v. *Killelea*, 370 Mass. 638, 648 (1976). See also *Commonwealth* v. *Hawley, supra* at 85.

Here, the instruction given did not point out the particulars which were the basis and purpose for the defendant's

request for an additional instruction. The judge told the jury that the defendant had objected to the prosecutor's argument on this topic and that he had excluded the argument at that time (which, in fact, he did not do). But the judge did not inform the jury, as the defendant had requested, that the prosecutor had objected to all of the defendant's evidence regarding his statements at the time of his arrest, that the court had excluded that evidence, and that it was for this reason that the jury must disregard the prosecutor's argument regarding the absence of that evidence.

A trial judge has broad discretion in the giving of instructions, *Commonwealth* v. *MacDonald,* 371 Mass. 600, 603 (1976); *Commonwealth* v. *Shagoury,* 6 Mass. App. Ct. 584, 599 (1978), cert. denied, 440 U.S. 962 (1979), and we do not mean to imply that curative instructions must include a detailed explanation of the reasons for disregarding the matter at issue. Here, however, the prosecutor had argued to the jury, in essence, that the defendant's "silence" in the face of the complainant's accusations was to be considered evidence of his guilt. In these circumstances, we do not think that a supplementary instruction could have been effective to cure the highly prejudicial effect of this argument unless the jurors were informed that the judge had ruled out the evidence on which it was based, or at least, that there was no evidence before them to support it.

We need not decide whether any of the factors discussed above is dispositive as to the insufficiency of the curative instruction here. Considering them together, we think that the instruction failed to cure the prejudice created by the prosecutor's argument. Therefore, in light of the prosecutor's improper argument regarding the defendant's silence, and of the inadequacy of the supplementary instruction in the circumstances, we reverse the judgment and remand the case for a new trial.[4]

---

[4]The Commonwealth argues that the propriety of the prosecutor's argument is not presented for review at all because the defendant failed to take yet a further objection after the supplementary instruction was given. However, the purpose of the objection requirement embodied in Rules 22 and 24(b) of the new Massachusetts Rules of Criminal Procedure,

2. *Prosecutor's comment on "dropping the complaint."*

As we have already concluded that retrial is necessary, we do not consider whether this comment, standing alone, was a serious misstep requiring reversal. We repeat once more, however, that "[i]t is long past time for prosecutors to prepare their closing arguments carefully in order to avoid the possibility of reversals of convictions because of prosecutorial error." *Commonwealth* v. *O'Brien,* 377 Mass. 772, 778 (1979). See *Commonwealth* v. *Haas,* 373 Mass. at 557 & n.11; *Commonwealth* v. *Earltop,* 372 Mass. 199, 204-206 (1977) (Hennessey, C. J., concurring); *Commonwealth* v. *Ryan,* 8 Mass. App. Ct. 941, 941-942 (1979).

3. *Exclusion of questions under rape shield law.*

Prior to trial, the defendant brought motions to allow evidence of the complainant's reputation for unchastity and of the complainant's alleged sexual conduct with a third party shortly before the alleged rape. At a lobby conference on the morning of trial, the judge denied both motions under the "rape shield law," G. L. c. 233, § 21B (inserted by St. 1977, c. 110), subject to voir dire at a later time. However, because the defendant apparently never requested voir dire thereafter, and because the defendant makes no argument here that the denial of his motions was error, we do not consider the propriety of the judge's rulings on them.

---

378 Mass. 842 (1979), is to ensure that an alleged error is brought clearly to the judge's attention so that he may squarely consider and decide the question. See 3 Wright & Miller, Federal Practice and Procedure § 842 (1969) (discussing analogous Fed.R.Crim.P. 51). See also *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357-360 (1979) (the only case to date discussing new Mass.R.Crim.P. 24 [b]). We think that the defendant's efforts here were sufficient to accomplish that purpose.

"We have insisted on counsel's duty to alert the judge to prosecutorial abuse, but we have not made a fetish of the form or persistence of the objections, lest the accused suffer unduly from the inadvertence of his advocate." *Commonwealth* v. *Hawley,* 380 Mass. at 86. Moreover, even if we reviewed the prosecutor's argument and the supplementary instruction only under the higher standard requiring a "substantial risk of a miscarriage of justice," *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967), we think that such a risk would be present in light of the constitutional dimensions of the error here. See *Commonwealth* v. *Wood,* 7 Mass. App. Ct. 455, 458 (1979), *S.C.* 380 Mass. 545 (1980).

The defendant does argue, however, that the judge erred in sustaining objections to seven questions asked by defense counsel at various points in the trial. The excluded questions fall into two separate categories. Questions in one category dealt with the prior relationship between the complainant and the defendant, and questions in the other dealt with the relationship between the complainant and Boyd.

The defendant assumes that the judge excluded these questions on the ground that they violated the rape shield law[5] and argues that the statute does not require that they be excluded. The Commonwealth's brief does not directly address the propriety of these questions under the statute. It argues instead that they are objectionable as to form, as being vague and overbroad, and that for that reason there was a likelihood that they would elicit answers which would have been improper under the statute.

Analytically, a determination whether these questions were properly excluded would involve examination of three distinct issues: (1) Were the areas of inquiry permissible under the rape shield law? (2) Were the questions proper as to form? and (3) Was the testimony which they sought to elicit material? We address this assignment of error only for guidance on retrial. In that context, we direct our attention mainly to the question whether the areas which the defendant seeks to explore are permissible under the statute, assuming proper form on retrial, and leave the question of materiality to the sound discretion of the trial judge.

In a prosecution for rape under G. L. c. 265, § 22, the rape shield law, G. L. c. 233, § 21B, prohibits the introduction of evidence dealing with "the reputation of a victim's sexual conduct." It also prohibits evidence of "specific instances of a victim's sexual conduct," with exceptions available in two specified areas when the defendant follows a specified procedure.[6]

---

[5] The transcript does not reveal the specific reason for the exclusion of each question. However, it is clear that at least three of these questions were disallowed under that statute.

[6] The relevant portion of the statute reads as follows: "Evidence of specific instances of a victim's sexual conduct . . . shall not be admissible except

No previous case has squarely presented the need to construe this new statute, see *Commonwealth* v. *Bohannon,* 376 Mass. 90, 95 (1978),[7] and given our holding in part one, *supra,* the present case is not the proper occasion for undertaking an extensive interpretation. As an initial matter, however, we note that the statute requires counsel (and the judge) to walk a fine line in dealing with the testimony regarding the complainant in a rape case. On one hand, counsel must have a demonstrable good faith basis for asking any question "even remotely connected with the [the complainant's] sexual conduct," *Commonwealth* v. *Bohannon, supra* at 95, and must seek an advance determination of the propriety of such a question if its propriety is unclear. *Id.* at 92 n.2. On the other hand, *Bohannon* itself demonstrates that there are circumstances in which the defendant's questioning concerns "a critical issue" in the trial and excessive limitation of such questioning can have such a "significant impact on the result of the trial" as to deny the defendant his "right to present a full defense." *Id.* at 94, citing *Chambers* v. *Mississippi,* 410 U.S. 284 (1973).

As to the areas of permissible examination, *Bohannon* emphatically requires caution regarding questions "in any way connected with the [complainant's] past sexual conduct." 376 Mass. at 92 n.2. We note that the area forbidden without an in camera hearing, however, is *sexual* conduct, and we therefore think the language cited above was not intended to bar a defendant from bringing out the threshold facts regarding the mere existence of a relationship between the defendant and the complainant. We agree with the de-

evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof."

[7] *Commonwealth* v. *Bohannon, supra,* was decided as a matter of common law and expressly did not "reach any issues related to the recently enacted 'rape-shield' statute." *Ibid.* However, parts of the opinion are clearly applicable to our discussion of the statute, and we treat them as such here.

fendant that it was critical to his theory of the case "to be able to show that the defendant, as a person on friendly terms with the complainant, had most likely been admitted to her apartment as a welcome guest, rather than gaining access by forcible entry." Therefore, insofar as the defendant's questions sought to establish that a relationship did, in fact, exist between the complainant and the defendant, i.e., that they knew each other, it is elementary that this area of examination would be permissible on retrial, assuming the questions are in proper form.[8] Likewise, and on the additional assumption that the inquiry is material, we see no reason why the defendant should not be allowed to make the same showing regarding any relationship which existed between the complainant and Milton Boyd.[9]

However, the issue of admissibility under the statute becomes more difficult where the defendant's questioning turns to the character and extent of such relationships. On this issue, we think that the defendant may also show how well the parties knew each other; however, such questions must be framed specifically enough to avoid the likelihood of eliciting testimony bearing on the complainant's past sexual conduct or reputation, and, if counsel has knowledge which gives him reason to believe that even carefully framed questions will elicit answers "in any way connected with the [complainant's] . . . sexual conduct" with the defendant or Boyd, he should

---

[8] In fact, as the Commonwealth points out, the background facts regarding the complainant's relationship with the defendant did come out at other points in the trial, including such facts as how long they had known each other, how they had met, and how often they saw each other. Such examination was clearly proper, if not necessary, to set the relationship in time and space for the jury.

[9] As to the materiality of this testimony, the defendant argues that it was important for the jury to understand that Boyd and the complainant were friendly enough, as neighbors, for Boyd to drop by the complainant's apartment without invitation. Otherwise, the defendant argues, the jury would be "completely mystified" as to how Boyd happened to knock at her door sometime on the day of the incident and see the defendant alone in her apartment, as Boyd testified. We note, however, that some of the defendant's questions regarding the relationship between Boyd and the complainant were not framed specifically enough to elicit the fact that he was an occasional visitor.

seek an advance determination of the propriety of such questions, as suggested in note 2 of *Bohannon, supra.*[10]

It is not feasible for us to frame a rule which would guide counsel in determining how far he or she may go in bringing out the character of the parties' prior relationships not covered by the specific provisions of the statute. Obviously, this will depend on the extent to which the content of the questions bears on sexual conduct or reputation, the care with which the questions are framed, and the particular facts of the case. For this reason, the decision as to the propriety of particular questions must be left to the discretion of the judge on retrial.[11] We only add parenthetically that just as a prosecutor must carefully prepare closing argument to avoid prejudice to the rights of the defendant, counsel for the defendant in a rape case must carefully prepare examinations to avoid prejudice to the rights of the complainant under the statute.

### 4. *Trial judge's criticism of defense counsel.*

The defendant claims that the trial judge repeatedly criticized and belittled defense counsel in front of the jury, and that this conduct denied the defendant due process by

---

[10] A fortiori, if counsel plans to examine specifically on the subject of one of the exceptions set out in the statute, he should follow the voir dire procedure set out therein. We note that the defendant here did properly observe the statutory requirement in bringing a pretrial motion for a ruling under the second exception. Because the report of the hospital's examination of the complainant indicated the presence of sperm, the defendant sought to introduce evidence that this was the result of intercourse with a person other than the defendant, and offered testimony by an (unnamed) witness who would say that he "left [complainant's] apartment early that morning." The judge excluded this evidence because defense counsel did not know whether the witness would testify that he had actually had sexual intercourse with the complainant. As noted *supra,* we need not decide whether this ruling was correct. Rather, we note the defendant's motion here is a good illustration of the kind of situation in which the statutory screening procedure must be observed.

[11] We note, however, that several of the defendant's questions are the kind of open-ended questions which should *not* be allowed under the statute. As to these questions, we agree with the Commonwealth that they are "virtually unlimited in scope" and "[p]rovide neither a time frame nor a focus to the general terms of . . . relationship."

depriving him of a fair trial before an impartial jury. He argues that the judge prejudiced his position in the eyes of the jury, and cites fourteen remarks made by the trial judge in support of that argument.[12]

We recognize that "any judicial comment is likely to be accorded substantial weight by the jury." *Commonwealth v. Sneed*, 376 Mass. 867, 870 (1978), citing *Quercia v. United States*, 289 U.S. 466, 470 (1933). See *Commonwealth v. Hanscomb*, 367 Mass. 726, 732 (1975) (Hennessey, J., concurring). We recognize further that the particular danger created by such criticism in open court is the likelihood that it will "impress the jury with the idea that [the judge] disfavors the attorney and, inferentially, the position the attorney represents." *State v. Pokini*, 55 Haw. 640, 645 (1974) (plurality opinion). Suffice it to say here that we hope that at retrial the judge will adhere to his duty to "keep the trial on an orderly course and to avoid prejudicial occurrences." *Commonwealth v. French*, 357 Mass. 356, 395 (1970), judgments vacated as to death penalty sub nom. *Limone v. Massachusetts*, 408 U.S. 936 (1972). See *Commonwealth v. Haley*, 363 Mass. 513, 521 (1973).

5. *Sufficiency of the evidence.*

One of the counts of the rape indictment charges that the defendant committed the offense of "unnatural sexual intercourse" — here it was an act of cunnilingus. See *Commonwealth v. Brown*, 6 Mass. App. Ct. 854 (1978). The most relevant testimony on this charge was given by the victim, who testified on direct examination that the defendant "put his mouth to — to my vagina," and on cross-examination that he "put his mouth down below." The defendant argues that this evidence is insufficient to support a conviction of rape, and that the judge therefore erred in denying the defendant's motion for a required finding of not guilty under Mass.R.Crim.P. 25, 378 Mass. 896 (1979). We do not

---

[12] In fairness to the judge, we note that the defendant's appellate counsel concedes that "[d]efense counsel's performance at trial was no model. The trial was pervaded by an aura of bumble."

agree. Cf. *Commonwealth* v. *Rogers,* 9 Mass. App. Ct. 812 (1980); *Commonwealth* v. *Brown,* 9 Mass. App. Ct. 609, 622-623 (1980).

In 1974, the Legislature enacted a comprehensive revision of the crimes involving violent sexual assault, which amended the rape statute to include the crime of forcible "unnatural sexual intercourse." St. 1974, c. 474, §§ 1-3. By this amendment, an act of forced cunnilingus became punishable as a rape. See *Commonwealth* v. *Gallant,* 373 Mass. 577, 584 (1977); *Commonwealth* v. *Mamay,* 5 Mass. App. Ct. 708, 710 (1977).[13] In *Commonwealth* v. *Gallant, supra,* the court stated:

> "[T]he definition of 'unnatural sexual intercourse' must be taken to include *oral* and anal *intercourse,* including fellatio, *cunnilingus,* and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body" (emphasis supplied). 373 Mass. at 584.

Given this definition, we think that the evidence here provides a sufficient basis for a reasonable jury to infer that there was an act of unnatural sexual intercourse within the meaning of G. L. c. 265, § 22. See *Commonwealth* v. *Whitehead,* 379 Mass. 640, 653 (1980) (cunnilingus); *Commonwealth* v. *Manning,* 6 Mass. App. Ct. 430, 434-435 (1978) (oral sex). See also *State* v. *Murry,* 136 La. 253, 260 (1914) (cunnilingus is "committed with the mouth and the female sexual organ").

We turn now to the defendant's argument on the sufficiency of the evidence with respect to all the charges. The defendant argues that the jury could not reasonably have rejected the testimony of three witnesses (Ruby and Natalie

---

[13] The defendant in the present case is charged under G. L. c. 265, § 22. While the two cited cases deal with prosecutions under §§ 23 and 22A, respectively, there is "nothing to suggest that the words 'unnatural sexual intercourse' were intended to vary in meaning from section to section." *Commonwealth* v. *Gonzales,* 5 Mass. App. Ct. 705, 707 (1977). See *Commonwealth* v. *Mamay, supra.*

Avinger and the nurse) to the effect that the complainant was wearing a black "nightgown" or "camisole" following the incident, in favor of the testimony of the complainant and one of the police officers to the effect that she was wearing pants, a top, and a coat. The argument continues that, if the jury must believe that the complainant was so dressed, they could not reasonably have believed that the acts allegedly committed by the defendant were accomplished by force or against her will, because "the inference is overwhelming that she donned [the nightgown] in preparation for consensual boudoir dalliance."

This argument lacks substantial merit. We do not comment on the logic of the inference which the defendant seeks to draw. We merely repeat that on a motion for directed verdict, the evidence is to be considered in the light most favorable to the prosecution, *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 257 (1980), and once a conflict in the evidence is raised, it is "for the jury to sort out and is not material to the directed verdict issue." *Id.* at 261. See *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 734 (1976).

*Judgments reversed.*

*Verdicts set aside.*