COMMONWEALTH vs. DOUGLAS P. BALDWIN.

Suffolk. January 14, 1987. — May 21, 1987.

Present: PERRETTA, QUIRICO, & KASS, JJ.

*Evidence,* Hospital record, Sexual conduct. *Rape. Unnatural Sexual Intercourse. Practice, Criminal,* Sentence, Prior conviction. *Words,* "Sexual molestation."

At the trial of indictments for statutory rape and indecent assault and battery, it was reversible error to admit in evidence that portion of a hospital record which unqualifiedly stated, "Diagnosis: Sexual molestation," where the only witness to the act complained of was the victim, and where the physical facts recorded at the hospitals in which the victim had been examined were equivocal. [201-203]

While noting that admission of certain illegible entries in hospital records during a criminal trial was arguably within the limits of the judge's discretion, this court, in reversing the case on another ground, stated that better practice, in the event of a new trial, would be to have stipulations as to the meaning of various abbreviations and symbols, to have the physician who made the entry explain it, or to exclude the entry. [203]

At the trial of an indictment charging statutory rape, there was sufficient evidence of penetration to permit submission of the case to the jury. [203-205]

There was no error in a judge's mistaken belief that she was sentencing a criminal defendant as a repeat offender, although he was not so charged, where the sentences actually imposed were within the statutory limits prescribed in G. L. c. 265, §§ 13B and 23, respectively, for first offenders. [205-206]

INDICTMENTS found and returned in the Superior Court on September 24, 1976.

The cases were tried before *Barbara J. Rouse,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Daniel P. Napolitano,* Assistant District Attorney (*Daniel C. Mullane,* Assistant District Attorney, with him) for the Commonwealth.

KASS, J. During the jury trial which led to the defendant's conviction of statutory rape[1] and indecent assault and battery on a child under fourteen,[2] three categories of evidence were received: the testimony of the complainant; the fresh complaint testimony of the complainant's mother; and medical records from two hospitals at which the complainant was examined. A principal ground for reversal urged on appeal — we think persuasively — is that it was error to admit so much of a hospital record as recited, "Diagnosis: Sexual molestation." We also consider a problem of legibility, the sufficiency of the evidence, and a sentencing issue.

When the alleged crimes occurred, the complainant was ten years old[3] and lived with her mother, the defendant (who was her stepfather), and six siblings. There was evidence of incidents of molestation around Thanksgiving of 1974 and on a night in February, 1975. The indictments as to which the jury returned verdicts of guilty pertained to the 1975 events; as to the 1974 occasion or occasions, the jury acquitted. After hearing from her child about the February incident, the complainant's mother took her for examination to Carney Hospital. Such was the child's resistance to examination of her genitalia that no entries appear in the record from which a significant inference could be drawn. The troublesome material, admitted over timely objection, appears on the first page of a medical record compiled two days later, when the child was re-examined at Harrington Memorial Hospital in Southbridge.

1. *Admissibility of diagnosis of "sexual molestation."* The statute which authorizes the admission of hospital records, so far as they relate to "treatment and medical history," excludes material "which has reference to the question of liability." G. L. c. 233, § 79. If, as *Commonwealth* v. *Gardner,* 350 Mass. 664, 665-667 (1966), holds, a physician may not testify as to

_____

[1] G. L. c. 265, § 23.

[2] G. L. c. 265, § 13B.

[3] For reason not altogether clear from the record, trial occurred some nine years after indictments were returned in 1976, and some ten years after the events. The complaining witness was, thus, twenty-one by the time she testified.

a fact ultimately within the province of the jury (in that case whether there had been a forcible entry), still less may a writing not susceptible to cross-examination be allowed to state a conclusory fact central to the jury's inquiry. See generally *Bouchie v. Murray,* 376 Mass. 524, 527-531 (1978); Liacos, Massachusetts Evidence 332-335 (5th ed. 1981).

In the instant case, the Harrington Memorial Hospital record unqualifiedly stated a "diagnosis" of "sexual molestation," a term synonymous to laymen with indecent assault and battery, one of the crimes with which the defendant was charged. Unlike the circumstance in *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 317-318 (1973), this was not an "admitting diagnosis" nor was the examining physician available, as he was in that case, to testify that it was merely a complaint noted by a secretary when the patient entered the hospital. Nor did it have the equivocal quality of the record entries in *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 (1972), which were, "Diagnosis": "? Rape" and "Nature of Illness": "? Assaulted — ? Raped." As the court noted in that case, the question marks signified that the victim's complaints were in doubt.

The diagnosis in the Harrington Memorial Hospital record was not an expert opinion that the physical facts indicated that the victim had "most probably" been assaulted by an attempt at penile insertion, *Commonwealth* v. *van Kooiman,* 353 Mass. 759 (1967), or, as in *Commonwealth* v. *Lewandowski,* 22 Mass. App. Ct. 148, 150 (1986), that the injuries were "consistent with sexual molestation." The words "sexual molestation" are distinct from notations of physical observations from which inculpatory inferences flow, e.g., odor of whiskey. See *Leonard* v. *Boston Elev. Ry.,* 234 Mass. 480, 482-483 (1920). In the case at bar, the only witness to the acts complained of was the victim; the physical facts recorded at the hospitals were equivocal. An unqualified statement, enhanced with a cloak of professional and institutional authority, that the very crime which the prosecution is bound to prove has occurred, acquires considerable potency, especially as the statement is physically before the jury during its deliberations. See generally *Commonwealth* v. *Mendrala,* 20 Mass. App. Ct. 398, 402-404

(1985). Admission of so much of the hospital record as contained the diagnosis of sexual molestation was error and entitles the defendant to a new trial.

2. *Illegible record entries*. As a general rule, it is well to excise illegible portions of hospital records admitted under G. L. c. 233, § 79. *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 586 (1980). Compare *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 573 (1983), in which the physician who made the illegible entries testified and was able to decipher them. The arguably inscrutable entry in the Harrington Memorial Hospital record was:

Vag. Clean

cx not seen Hymen tight, IF c̄ evidence

of healing lac at 10 o'c

ut. ting. No ola masses

Illegibility is a relative matter and there must be broad discretion in the trial judge to determine in a particular case whether writing in a hospital record can be read and decoded. Defense counsel objected that the entry in question was not legible but in closing argument translated it (apparently anticipating the prosecution's closing argument) to mean: "Vagina clean cervix not seen hymen tight, one finger with evidence of healing laceration at ten o'clock."[4] While admission of the entry set out above was perhaps within the limits of the allowed discretion, it would seem better, in the event of a new trial, to have stipulations as to the meaning of the abbreviations and symbols, to have the physician who made the entry explain them (an unlikely possibility in view of the antiquity of the entry and subversive of the purpose of the statute, i.e., to obviate the need for doctors and nurses coming to court[5]), or to exclude the entry.

3. *Sufficiency of the evidence as to rape*. Concerning the November, 1974, episode, the victim testified to digital penetration. The jury, however, returned verdicts of not guilty on

---

[4] No one attempted an interpretation of the last line of notes or attempted to draw inferences from it.

[5] See *Bouchie* v. *Murray*, 376 Mass. 524, 527 (1978).

the indictments arising out of events in 1974. In connection with the episode of February, 1975, the victim's testimony was uncertain and the defendant argues on appeal that it did not support a finding of guilt as to statutory rape.[6] At trial the defense had not moved for a required finding of not guilty, but a finding "based on legally insufficient evidence [is] inherently serious enough to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986). See *Commonwealth* v. *Assad,* 19 Mass. App. Ct. 1007, 1008 (1985). To the sufficiency of the evidence we apply the standard set out in *Commonwealth* v. *Latimore,* 378 Mass. 671 (1979). It is not enough "to find that there was some record evidence, however slight, to support each essential element of the offense"; there must be "enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Id.* at 678.

About the February, 1975, incident, the complainant had testified that her stepfather "got up on top of me" and "tried to put his penis inside of me." He had not, she said, succeeded, although the attempt had lasted ten minutes. He had "used [vaseline] to put it around in my vagina" with his finger. As to whether the defendant had inserted his finger in her when he was putting the vaseline on, the complainant replied: "I don't remember. I think so, just like around it and stuff."

The jury did not, nor was it required to, make a specific finding whether penile or digital penetration had occurred. A statutory rape indictment encompasses unnatural as well as natural sexual intercourse, *Commonwealth* v. *Gallant,* 373 Mass. 577, 584 (1977), and will be supported by a finding of penetration of the female sex organ by the male sex organ, *ibid.,* or, among other things, of insertion of a finger into the genital opening of another person's body. *Commonwealth* v. *Mamay,* 5 Mass. App. Ct. 708, 710 (1977).

Intrusion into the vagina itself is not required to make out the wrongful penetration. Touching by the male of the vulva

---

[6] Sufficiency of the evidence as to indecent assault and battery is not in contest.

or labia, as may surely be inferred from spreading vaseline and ten minutes or so of attempted penile penetration, is intrusion enough. See *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 17-18 (1980); *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 612-613 (1981). See also *Gardner* v. *State,* 263 Ark. 739, 748 (1978); *People* v. *Bristol,* 115 Mich. App. 236, 237-238 (1981); and Annot., What Constitutes Penetration in Prosecution For Rape or Statutory Rape, 76 A.L.R. 3d 163, § 3 (1977). There was sufficient evidence about the nature of the February, 1975, incident to take the case to the jury.

4. *Sentencing.* Baldwin claims that the trial judge sentenced him as a second offender, although he was not so charged. If a defendant is to be subject to a prescribed statutorily enhanced penalty because of a former conviction, the complaint or indictment must state that a second, third, etc., offense is involved. *Commonwealth* v. *Harrington,* 130 Mass. 35, 36 (1880). *Commonwealth* v. *Murphy,* 389 Mass. 316, 320-321 (1983). During disposition proceedings, the judge remarked, "Does the Commonwealth understand that this man has been convicted of a rape and an indecent assault and battery previously? And do you understand that that means he has to serve a minimum of five years?"[7] The sentence she imposed was not more than twenty nor less than eighteen years at M.C.I., Cedar Junction, on the rape, and not more than five nor less than three years, concurrent, at M.C.I., Cedar Junction, on the indecent assault and battery.

Each sentence was within the statutory limits prescribed in G. L. c. 265, § 23 and § 13B, respectively, for first offenders. All the cases resulting in reversal on the *Harrington* principle, i.e., that the defendant was treated as a repeat offender when not so charged, arose when the punishment exceeded the statutory maximum for the first offense. See *Tuttle* v. *Commonwealth,* 2 Gray 505 (1854); *Garvey* v. *Commonwealth,* 8 Gray 382 (1857); *Commonwealth* v. *Harrington,* 130 Mass. at 36; *Walsh* v. *Commonwealth,* 224 Mass. 39, 40 (1916). As the

[7] See G. L. c. 265, § 23. Section 13B of c. 265 also provides for enhanced punishment for repeat offenses.

sentences here were within the limits established for first offenders there was no error. In the event of a new trial, however, the trial judge should recognize that no mandatory enhanced punishment flows from the particular indictments brought in this case. A sentencing judge, of course, may always consider prior convictions as a reason for imposing, as matter of discretion, a sentence on the severe end of the scale.

For the reasons stated in part 1, above, the judgments are reversed and the verdicts are set aside.

*So ordered.*