COMMONWEALTH *vs.* ISAAC B. NYLANDER.

No. 88-P-680.

Suffolk. December 12, 1988. — January 20, 1989.

Present: GREANEY, C.J., CUTTER, & ARMSTRONG, JJ.

*Rape. Unnatural Sexual Intercourse. Evidence,* Sexual conduct, Hospital record. *Practice, Criminal,* Instructions to jury. *Witness,* Competency. *Judge. Words,* "Unnatural sexual intercourse."

At the trial of indictments charging rape of a child under age sixteen, one indictment charging rape by natural sexual intercourse and the other by unnatural sexual intercourse, the judge correctly denied the defendant's motions for the entry of required findings of not guilty, where the evidence was sufficient to warrant a finding by the jury of penetration on both indictments. [786-787]

There was no merit to a criminal defendant's argument that the judge's instructions to the jury at the trial of an indictment charging rape by natural sexual intercourse erroneously defined the element of penetration and permitted the jury to convict the defendant on their finding of an act which constituted either an assault with intent to commit rape or an indecent assault and battery. [787-788]

With respect to an indictment charging rape by unnatural sexual intercourse, the judge's instructions to the jury that a conviction could be returned if the Commonwealth "prove[d] beyond a reasonable doubt some penetration of the defendant's penis into that area between the alleged victim's buttocks, no matter how slight that penetration might be," were impermissibly vague and could have resulted in the defendant's conviction upon a finding by the jury of the commission of a lesser type of assault or of some lesser criminal conduct. [788-792]

At the trial of indictments charging rape of a child under age sixteen, the judge did not abuse his discretion in finding the victim's mother competent to testify. [792]

In the circumstances, the judge at a criminal trial properly admitted in evidence certain hospital records of the defendant. [792-793]

There was no merit to the argument that the judge at a criminal trial was biased against the defendant in the conduct of the trial. [793]

INDICTMENTS found and returned in the Superior Court Department on December 8, 1987.

The cases were tried before *Robert A. Mulligan,* J.

*Frank L. Bruno* for the defendant.

*Nijole Makaitis Slezas,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. A jury in the Superior Court convicted the defendant on two indictments charging him with rape of a child under sixteen. One indictment (no. 067907) charged rape by natural sexual intercourse; the other (no. 067908) rape by unnatural (i.e. anal) sexual intercourse. He was sentenced to serve forty-five to sixty years on each conviction with the sentences to be served concurrently. The defendant has argued six issues on appeal, the most important of which concern the sufficiency of the Commonwealth's evidence to establish the rapes and the judge's instructions concerning the element of penetration. We affirm the conviction on indictment no. 067907. We reverse the conviction on the other indictment and order further proceedings in that case.

The victim, who was five years old at the time of the incidents, testified that on one occasion the defendant got her to play a "game" with him in the bedroom. The defendant took off the victim's jeans and underpants, leaving her naked from the waist down. The defendant took off his pants and underpants. He got on top of her while she was on the bed and "moved around a little." While moving around, the defendant's "private spot" was touching her "bum". After he was finished, the defendant wiped the victim's "bum" with a towel. The defendant's actions were demonstrated to the jury by the victim's use of two anatomically correct dolls and "moving the dolls in a rocking motion." The victim indicated that the defendant's "private spot" was the penis on the male doll.

On a second occasion, the child was lying on her back on a couch. The defendant pulled her underpants "halfway down" and took his clothes "halfway down." He then touched her "private spot" with his "private spot." The victim indicated

that the genital opening on the female doll was her "private spot".[1]

In addition to the victim's testimony and the demonstrations with the dolls, a nurse practitioner testified that the victim had been diagnosed as having gonorrhea and had been treated for the disease. The prosecutor also called a physician (an internist) who testified that the defendant had been diagnosed as having gonorrhea. This doctor indicated that gonorrhea "has to be acquired through intimate contact." By intimate contact, the doctor meant either genital-to-genital contact or oral-anal contact, at least in a manner that brings the "surface of . . . an infected person [into contact] with the recipient." In the doctor's opinion, casual contact would not be sufficient to transmit the disease.

1. The Commonwealth presented sufficient evidence to permit the jury to infer that the defendant had penetrated the victim while performing acts of natural and unnatural sexual intercourse. The Commonwealth's evidence is similar to the evidence given by the child victim in Commonwealth v. Reid, 400 Mass. 534, 540-541 (1987), who testified in terms of sexual touching of her "private parts" by the defendant's penis. The victim in this case clearly identified what she called "private spots" as her genital opening and the defendant's penis, and she indicated that her "bum" was her buttocks. By her testimony and the use of anatomically correct dolls, the victim demonstrated to the jury the position of her body and the defendant's body during the various incidents.

It reasonably could be inferred from the victim's testimony and her demonstrations with the dolls that the defendant had applied pressure on her and engaged in movements in an effort to ejaculate. In this fashion, the testimony and use of the dolls indicated that the defendant had penetrated the victim. Additionally, the medical evidence pointed to penetration by the

---

[1] The victim also testified that on another occasion the defendant removed her pajama bottoms, pulled down his pants and then, while she was lying on her stomach, he "rolled around a little" with his "private spot" touching her "bum."

defendant as the cause of the victim's gonorrhea.[2] We agree with the defendant that evidence of penetration was necessary to prove the acts of rape charged in both indictments in order to differentiate those acts from other prohibited sexual touchings or conduct such as assault on a child under sixteen with intent to commit rape, see G. L. c. 265, § 24B, indecent assault and battery on a child under fourteen, see G. L. c. 265, § 13B, or unnatural and lascivious acts on a child under sixteen, see G. L. c. 272, § 35A. See *Commonwealth* v. *Cobb*, ante 283, 284-286 (1988). However, the evidence in this case, together with the reasonable inferences that could be drawn therefrom, see *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), was adequate to warrant a finding by the jury of penetration on both indictments. Based on the evidence, the judge correctly denied the defendant's motions for required findings of not guilty.[3]

2. (a) We reject the defendant's argument that the judge's instructions to the jury on the indictment charging rape by

[2] The fact that the physician at one point in her direct testimony referred to "surface" contact between the infected person and the recipient as sufficient to transmit gonorrhea did not render her testimony of no evidentiary value on the issue of penetration. The jury were entitled to view the medical evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). When viewed in this light, the medical evidence permitted the jury to find that the disease had been given to the victim by the defendant's penetration of her sexual organ or anus. See cases collected in 3 C. Torcia, Wharton's Criminal Law § 285 n.49 (14th ed. 1980). Also, the Commonwealth did not have to eliminate the victim's uncle, who also may have abused her, as the source of the disease before the jury could draw the inference.

[3] We pause here to deal with another issue argued by the defendant concerning the denial of his motion to dismiss the indictments on the basis that the prosecutor had withheld exculpatory information from the grand jury. The issue lacks substance. The fact that the victim may have been sexually assaulted by her uncle would not have tended to undermine substantially the evidence against the defendant. See *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. 410, 412-413 (1988). There was also no need to present evidence to the grand jury about the credibility of the victim's mother. The information obtained from the mother constituted a minor part of the testimony given by the investigating police officer before the grand jury. The mother, therefore, was not an "important witness" whose credibility was crucial to the grand jury's decision. *Commonwealth* v. *Petras, ante* 483, 487-489 (1988). See *Commonwealth* v. *Champagne*, 399 Mass. 80 (1987).

natural sexual intercourse erroneously defined the element of penetration and permitted the jury to convict the defendant on their finding of an act which constituted an assault with intent to commit rape or an indecent assault and battery.

With respect to this indictment, the judge instructed the jury that they had to find actual penetration to establish a rape. He indicated that penetration permissibly could be found "if the Commonwealth prove[d] beyond a reasonable doubt direct contact of the . . . head of the defendant's penis with the vulva or labia of the alleged victim . . . ." This instruction is essentially a restatement of the language used in *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987), to describe the minimum degree of penetration necessary to establish the traditional common law notion of rape. As was said in *Baldwin*: "Intrusion into the vagina itself is not required to make out the wrongful penetration. Touching by the [penis] of the vulva or labia . . . is intrusion enough." *Ibid*. The jury instructions on this offense were correct and complete.

(b) We agree with the defendant's argument that the jury instructions on the indictment charging rape by unnatural sexual intercourse were impermissibly vague, and, as a result, we conclude that the defendant should be subject to further proceedings in the Superior Court.

With respect to this indictment, the judge instructed the jury that a conviction could be returned if the Commonwealth "prove[d] beyond a reasonable doubt some penetration of the defendant's penis into that area between the alleged victim's buttocks, no matter how slight that penetration might be." "Unnatural sexual intercourse" under G. L. c. 265, § 23, the revised statute punishing rape of a child, has been defined as including "anal intercourse . . . and other intrusions of a part of a person's body or other object into the . . . anal opening of another person's body."[4] *Commonwealth* v. *Gallant,* 373 Mass. 577, 584 (1977). While the term "anus" is often used

---

[4] The definition explains the term "unnatural sexual intercourse," which was not defined by the Legislature, and it becomes part of the statute's meaning until such time as it is changed either by the Legislature or by further judicial construction.

colloquially to describe a person's buttocks, or the groove between the buttocks, it is the name of a bodily part which has a precise medical definition. Medically speaking, the term refers to "[t]he very end — the last inch or so — of the digestive canal, more specifically of the rectum . . . In practice, the term *anus* is often applied to the orifice or opening of the structure, rather than to the structure itself." 1 Schmidt's Attorneys' Dictionary of Medicine A-273 (1986). The term "anal opening" has never been defined as including the buttocks or the groove between the buttocks.

We think the references to "anal intercourse" and "intrusions into the anal opening" in the definition of unnatural sexual intercourse provided by the *Gallant* decision have to be taken as using the word "anus" in its technical sense to describe intercourse which involves penetration of the anus by the penis or an intrusion into that opening by some other bodily part (such as a finger) or another object. We reach this conclusion for several reasons.

First, the definition of "unnatural sexual intercourse" fashioned by the *Gallant* decision also includes "intrusions . . . into the genital . . . opening of another person's body." 373 Mass. at 584. A woman's "genital opening" has a precise meaning and includes, in addition to the vagina, the anterior parts of the female sexual organ, known as the vulva and the labia. The use of the term "genital opening" in *Gallant* permitted the court in the *Baldwin* case, 24 Mass. App. Ct. 200, 204-205, to conclude that penetration of the anterior parts of the female sex organ was enough to prove forcible rape.[5] It is unlikely that the *Gallant* decision would have used a technical term such as "genital opening" in defining one type of unnatural sexual intercourse, while intending, at the same time, that the term "anus" (which is used in defining another type of unnatural . sexual intercourse) not be construed in its technical sense.

---

[5] The proposition that entry of the anterior parts of the female sexual organ is sufficient to prove rape and that it is not necessary for the vagina itself to be penetrated is the rule in the majority of jurisdictions that have considered the issue. See cases collected in Wharton's Criminal Law § 284 n.29.

Second, the *Gallant* decision points out that the Model Penal Code "has been the source of much of the recent [Massachusetts] legislation on rape . . . . " 373 Mass. at 588. That Code defines "deviate sexual intercourse" (its term for "unnatural sexual intercourse") as "sexual intercourse per os or per anum between human beings who are not husband and wife, and any form of sexual intercourse with an animal." Model Penal Code § 213.2(1)(1962). See 373 Mass. at 589. It appears that the term "per anum" is used by the Code in the technical sense described above.

Many States have also defined rape to include penetration of the "anus" or "anal opening," as well as contact with the "anus," or "anal intercourse." [6] There are no decisions in any of these States suggesting that the crime should be defined for the jury in words different from the words used in the governing statute. The one reported case that has considered the issue has adhered to the literal words of the statute of its State to define, and, consequently, to instruct a jury about the crime. See *State* v. *Griffin,* 319 N.C. 429, 433 (1987) (a "sexual act" for conviction of first-degree sexual assault "requires penetration of the anal opening by the penis"). The statute in Texas, which punishes "[d]eviate sexual intercourse," namely "any contact between any part of the genitals of one person and the mouth or anus of another person," states in the commentary to

---

[6] See Ariz. Rev. Stat. Ann. § 13-1401(3) (1978 & Supp. 1988); Ark. Stat. Ann. § 5-14-101 (1987); Conn. Gen. Stat. Ann. § 53a-65 (West 1985); Del. Code Ann. Tit. 11, § 761 (1987); Fla. Stat. Ann. § 794.011 (West 1976 & Supp. 1988); Ill. Ann. Stat. c. 38, par. 12-12 (Smith-Hurd 1979); Kan. Stat. Ann. § 21-3501 (1987); Ky. Rev. Stat. Ann. § 510.010 (Michie Bobbs-Merrill 1985); La. Rev. Stat. Ann. § 14.41 (West. 1986); Me. Rev. Stat. Ann. Tit. 17-A § 251 (West. 1983 & Supp. 1988); Mich. Comp. Laws Ann. § 750.520a (West 1968 & Supp. 1988); Mo. Ann. Stat. § 566.010 (West 1979 & Supp. 1988); Mont. Code Ann. §§ 45-2-101(61), 45-5-503 (1987); Nev. Rev. Stat. § 200.364 (1987); N.H. Rev. Stat. Ann. § 632-A:1 (1986); N.M. Stat. Ann. § 30-9-11 (1978); N.Y. Penal Law § 130.00(2) (Consol. 1977); N.C. Gen. Stat. § 14-27:(4) (1983); Ohio Rev. Code Ann. § 2907.01 (Baldwin 1988); Or. Rev. Stat. § 163.305 (1987); 18 Pa. Cons. Stat. Ann. § 3101 (Purdon 1983); Tenn. Code Ann. § 39-2-602 (1982 & Supp. 1988); Vt. Stat. Ann. Tit. 13, § 3251(1) (1977 & Supp. 1988; W. Va. Code § 68-8B-1 (1974 & Supp. 1988); Wis. Stat. Ann. § 940.225 (West 1982 & Supp. 1988).

the statute that " 'anus' . . . is intended in its strict anatomical sense — the posterior opening of the alimentary canal — thus excluding the buttocks." Tex. Penal Code Ann. § 21.01 (Vernon 1974 & Supp. 1988). See *Villanueva* v. *State*, 703 S.W. 2d 244 (Tex. App. Ct. 1985). The Commonwealth has not brought to our attention any decision in which a jury were instructed that anal rape could be committed by bodily contact that did not involve penetration of the anus.

Third, adherence to the technical meanings of the terms "anus" and "anal opening" to define penetration is consistent with the principle that penal laws are to be strictly construed to avoid a conviction on evidence that only proves a less serious crime than the one with which the defendant is charged. See *Commonwealth* v. *Rhodes*, 389 Mass. 641, 646-647 (1983); *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984). Penetration (or intrusion into) the genital or anal opening is required to prove rape. That element sharply differentiates rape from other crimes such as assault with intent to commit rape, indecent assault and battery, and unnatural and lascivious conduct — crimes which may, in a given case, constitute lesser included offenses under a charge of rape.

Defining the penetration element of unnatural sexual intercourse of the sort in issue here as involving something less than an intrusion into the anus obscures the distinction between rape and these other crimes. That imprecision renders it entirely possible that a jury could convict someone of rape after finding that the Commonwealth's evidence only established a lesser offense. For example, an instruction to the jury advising them that they could find penetration sufficient for a conviction of rape in the traditional common law sense if they found that a defendant had placed his penis into the area between the woman's thighs would not be considered correct. Such an instruction would permit conviction of rape on proof of a lesser form of assault. Similarly, an instruction that penetration sufficient to convict of rape by unnatural sexual intercourse is shown by a defendant putting his penis into the area between the victim's buttocks creates a likelihood of misapprehension and is not precise enough. This result is to be avoided. See

*Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 582-586 (1980).

We conclude that, while the evidence on this indictment was sufficient to prove penetration, the instructions were impermissibly vague and could have resulted in the defendant's conviction of rape by unnatural sexual intercourse upon a finding by the jury of the commission of a lesser type of assault or of some lesser criminal conduct.[7]

3. The remaining issues argued by the defendant are insufficient to warrant a new trial on the rape by natural intercourse indictment. We deal with them summarily.

(a) The judge carefully handled the question of the competency of the victim's mother to testify. His conclusion that she was a competent, although somewhat reluctant, witness represents a discretionary determination that we will not upset, see *Commonwealth* v. *Sires*, 370 Mass. 541, 546 (1976), particularly because the judge "had the person under his eye while she was actually in the process of testifying." *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980).

(b) The judge properly admitted in evidence the hospital records of one "Bunting Nylander," who had been diagnosed as suffering from, and had been treated for, gonorrhea. There were sufficient facts to identify "Bunting" as the defendant. These facts included a clinic card in the records with the name "Isaac B. Nylander," a treatment record of "Isaac Nylander,"

---

[7] Contrast the situation in *Commonwealth* v. *Redgate,* 25 Mass. App. Ct. 965, 968 (1988). In response to the jury's question whether "penetration of the area between the cheeks of the buttocks and not necessarilly the anal opening constitute[s] rape under the law?", the judge responded "No." The judge then went on to instruct in part as follows:

> "I've told you that penetration is an element of this crime and the penetration must be of the anal opening. That, under some circumstances, depending upon the position, would require penetration of the area between the cheeks of the buttocks, but the element of the crime requires further penetration of the anal . . . opening."

The judge went on to explain that even slight penetration of the anal opening would be sufficient to prove rape. This court did not have to reach the question of the correctness of this instruction in deciding the appeal, so the question remained open until this decision.

and a listing of the defendant's wife as the person to be notified in case of an emergency. Other facts in the record that were not consistent with the defendant's personal history went to the weight to be given to the records by the jury.

(c) The assertion that the judge was biased against the defendant in the conduct of the trial is groundless. The letter sent by the judge to the judges on the Appellate Division of the Superior Court concerning the reasons for his sentences was proper and contains nothing which indicates or establishes a bias.

4. The judgment on indictment no. 067907 is affirmed. The judgment on indictment no. 067908 is reversed, and the defendant is to stand for further proceedings in the trial court on that indictment.

*So ordered.*