COMMONWEALTH vs. HARRY A. SCHOENING.

Suffolk. September 12, 1979. — November 14, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Conspiracy. Evidence,* Other offense, Competency. *Practice, Criminal,*
    Grand jury proceedings.

At the trial of an indictment for conspiracy to bribe a public official with
    an indictment for conspiracy to steal from the Commonwealth, guilty
    findings were warranted by the evidence, including evidence that a
    consultant associated with a corporation having contracts with the
    Department of Education paid money to the defendant, an employee
    of the department and of the Bureau of Special Needs, upon solicita-
    tion pursuant to a mutual understanding whereby the consultant
    would favor the defendant with money through the corporation and
    the defendant would favor the consultant and the corporation by using
    his influence in the rating or assessment of proposals for vocational ed-
    ucation grants and in reviews thereof within the department, utilizing
    greatly inflated estimated costs funded with Commonwealth monies
    [239-240]; the evidence established the consultant's nephew, who
    issued a corporation check to the defendant marked "payoff," as one of
    at least three conspirators [240-241]; and evidence of the defendant's
    use of his position in similar activities but involving different methods
    was admissible to show intent, motive, and common scheme [242].
At the trial of indictments for conspiracies, there was no error in the ad-
    mission in evidence of transactions in which the defendant partici-
    pated which were not presented to the grand jury but which were
    limited to show motive and intent. [243]

INDICTMENTS found and returned in the Superior Court
on September 14, 1977.

The cases were heard by *Ronan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*William P. Homans, Jr.,* for the defendant.

*Bernard Manning,* Assistant Attorney General, for the Commonwealth.

HENNESSEY, C.J.   The defendant, a State employee concerned in the awarding of vocational education grants, was charged in two indictments with conspiracy to bribe a public official, as described in G. L. c. 268A, § 2, and c. 274, § 7, and conspiracy to steal from the Commonwealth, in violation of G. L. c. 266, § 30, and c. 274, § 7.[1]

---

[1] The statutes provide in pertinent part:

G. L. c. 268A, § 2, as amended by St. 1964, c. 287:

"(*a*)  Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any state . . . employee, . . . or who offers or promises any such employee . . . to give anything of value to any other person or entity, with intent

"(1)  to influence any official act or any act within the official responsibility of such employee . . ., or

"(2)  to influence such an employee . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud on the commonwealth or a state, county or municipal agency, or

"(3)  to induce such an employee . . . to do or omit to do any act in violation of his lawful duty; or

"(*b*)  Whoever, being a state . . . employee . . ., directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of value for himself or for any other person or entity, in return for

"(1)  being influenced in his performance of any official act or any act within his official responsibility, or

"(2)  being influenced to commit or aid in committing, or to collude in, or allow any fraud, or make opportunity for the commission of any fraud, on the commonwealth or on a state, county or municipal agency, or

"(3)  being induced to do or omit to do any acts in violation of his official duty;

" . . . .

"(*d*)  . . . shall be punished by a fine of not more than five thousand dollars or by imprisonment in the state prison for not more than three years or in a jail or house of correction for not more than two and one half years, or by both such fine and imprisonment in a jail or house of correction; and in the event of final conviction shall be incapable of holding any office of honor, trust or profit under the commonwealth or under any state, county or municipal agency."

G. L. c. 266, § 30, as amended through St. 1968, c. 737, § 10:

"(1)  Whoever steals, or with intent to defraud obtains by a false pretence, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined

In particular, the indictment charged that the defendant conspired from 1972 through 1975 with Edward F. Mackin and Olympus Research Corporation, indicted coconspirators, and with unindicted coconspirators James D. Coffis, Patrick J. Weagraff, and others (1) to violate the laws affecting the conduct of public employees by corruptly giving money and other things of value to governmental employees with the intent to influence official acts and to influence these employees to commit a fraud on the Commonwealth and (2) to steal monies of a value in excess of $100, the property of the Commonwealth. After a five day, jury waived trial, the defendant was found guilty on both indictments. His sentences of concurrent terms of one year's imprisonment were suspended, and he was placed on probation for two years with conditions imposed.

In this appeal, transferred to this court on our own motion, the defendant challenges his convictions under the provisions of G. L. c. 278, §§ 33A-33G. He contests the sufficiency of the evidence on both indictments, including the alleged failure to prove that the object of the conspiracy to steal involved property of the Commonwealth; the judge's

---

in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall . . . if the value of the property stolen exceeds one hundred dollars, be punished by imprisonment in the state prison for not more than five years, or by a fine of not more than six hundred dollars and imprisonment in jail for not more than two years . . . .

"(2) The term 'property', as used in this section, shall include money . . . ."

G. L. c. 274, § 7, inserted by St. 1968, c. 721, § 1:

"Any person who commits the crime of conspiracy shall be punished as follows:

". . . .

"Third, if clauses first and second do not apply and the purpose of the conspiracy or any of the means for achieving the purpose of the conspiracy is a felony punishable by imprisonment in the state prison for not more than ten years, by a fine of not more than five thousand dollars or by imprisonment in the state prison for not more than five years or in jail for not more than two and one half years, or by both such fine and imprisonment."

failure to apply Wharton's Rule with regard to the conspir-
acy to bribe; the introduction in evidence of other allegedly
dissimilar illegal acts to show a common scheme, motive,
and intent; and the admission in evidence of matters not
presented to the grand jury.[2]  We conclude that there was
no error and affirm the convictions.  A summary of the facts
follows.[3]

The defendant was first employed by the Department of
Education (DOE) in 1972.  In 1973 he was assigned to work
for Leo Stubbs, a specialist in the Bureau of Special Needs
(BSN) responsible for developing, implementing, and evalu-
ating programs for the handicapped in Massachusetts.
Eventually the defendant assumed Stubbs' duties unofficial-
ly since Stubbs was chronically ill and had a poor attend-
ance record.  Through Stubbs, the defendant met a number
of representatives from agencies receiving BSN grants.
Among these were the superintendents of the Cotting School
for Handicapped Children (Cotting School) and the Protes-
tant School for the Blind (Protestant School).

In 1974 the defendant in his official position with BSN
evaluated favorably grant proposals from both the Cotting
and Protestant Schools.  He also negotiated contracts total-
ling $16,000 with both organizations on behalf of Mizar
Associates, Inc., a corporation which he helped establish in
late 1973 and which paid the defendant a $125 weekly
salary.

During the summer of 1974, the defendant sought money
from Edward F. Mackin, a consultant associated with
Olympus Research Corporation (Olympus), a firm having
contracts with DOE.  Mackin during this time had sev-
eral projects before BSN.  Six checks totaling $1,200 were
issued by Olympus to the defendant.  One of the three

---

[2] Additional assignments of error were withdrawn in oral argument.

[3] The defendant's motion to strike portions of the Commonwealth's
brief alleged to be in violation of Mass. R.A.P. 16 (e), as amended, 378
Mass. 925 (1979), is allowed.  The pages in question, although summaries
of assertions previously made and documented by record references, fail
to make adequate references to the trial transcript.

checks issued by James D. Coffis, Mackin's nephew, had the word "payoff" written on its face. At trial, Mackin characterized this transaction as "an investment, a speculation." The defendant was not employed by Olympus or Mackin during this time and did no work for the corporation or for persons associated with it.

In late 1974 the defendant, still an DOE employee, approached an employee of SRS Consultants, a firm doing business with BSN. In response to the defendant's inquiries as to possible sources for a loan to cover law school tuition, the employee referred him to Joshua Shuchatowitz, the president of SRS. Shuchatowitz arranged for another corporation to issue a $900 check to New England School of Law. The $900 was thereafter credited to the defendant's tuition account. The money was never repaid.

In April, 1975, Patrick Weagraff, then Associate Commissioner for Occupational Education, questioned the defendant about a series of grants of more than a quarter of a million dollars authorized by Stubbs and the defendant for the Cotting School, the Protestant School, and the Cerebral Palsy Association. In particular, Weagraff asked if any bribes or kickbacks were involved. The defendant recounted the willingness of the Cotting and Protestant directors to "play ball" if grants were assured, and mentioned the subsequent contracts between those two concerns and Mizar.

That same afternoon, in a meeting called by Weagraff, the defendant repeated substantially the same information to two other DOE officials. The Commissioner and an assistant attorney general were also informed of these developments. Later Mackin interceded on the defendant's behalf and asked Weagraff to "squash" the matter. Weagraff, who, throughout this time, had been receiving from Mackin what was described in testimony as "bribes," responded that things had moved rapidly but that he would do what he could. Weagraff subsequently advised the defendant of the details of the investigation.

No action was taken against the defendant, and he remained an DOE employee. However, Weagraff did advise the defendant that it would be in his best interest to seek employment elsewhere. The defendant took Weagraff's advice and sought employment with the Department of Correction (DOC). He resigned from DOE on September 5, 1975, and became employed as a DOC planning coordinator under a grant authorized by Weagraff.

During the summer of 1975 the defendant sought work from Mackin. Mackin agreed to pay the defendant $1,000 over a period of weeks for the defendant's contribution to proposals concerning the International Brotherhood of Police Officers and an arts and humanities project. To circumvent Weagraff's objections to the defendant's name appearing on Olympus' payroll, Mackin issued the checks to the defendant's girlfriend, who did no work for the $750 the defendant eventually received.

In 1977 the defendant asked Mackin for proof of the 1975 work in order to meet the queries of investigators. When the defendant was informed that the notes would incriminate him, he agreed with Mackin not to take the information. During this same period in 1977, the defendant put Mackin in contact with an attorney who facilitated payment on a DOE-Olympus contract held up by investigations into Weagraff's activities.

1. In examining the sufficiency of the evidence of the defendant's guilt, the standard of review to be applied by this court is whether "there was enough evidence that could have satisfied a rational trier of fact of each [essential] element [of the offense] beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 641, 677-678 (1979). This evidence may, of course, include inferences "not too remote in the ordinary course of events, or forbidden by any rule of law." *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933). We conclude that the evidence warranted findings that the defendant was guilty of conspiracy to bribe, and to steal property of the Commonwealth.

The principles determinative of the offense of conspiracy are well settled. See, e.g., *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 249-251 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972); *Commonwealth* v. *Beal*, 314 Mass. 210, 221-222 (1943); *Commonwealth* v. *Hunt*, 4 Met. 111, 123 (1842); *Commonwealth* v. *Judd*, 2 Mass. 329, 336-337 (1807). These principles do not need repeating except to note that circumstantial evidence may be used to prove a conspiracy. *Commonwealth* v. *Stasiun*, 349 Mass. 38, 50 (1965). *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 494 (1921). Thus, "[c]ommon purpose may be inferred from concerted action converging to a definite end," *Commonwealth* v. *Beal, supra* at 221, and active participation in a conspiracy may be indicated by an unarticulated "affirmative acquiescence to the object of a conspiracy." *Commonwealth* v. *Beneficial Fin. Co., supra* at 250, 303.

The trial judge found as a fact that Mackin paid over to the defendant relatively small amounts of money, aggregating approximately $2,000, solicited by the defendant as an employee within the terms of G. L. c. 268A. The judge further found that the defendant and Mackin reached a mutual understanding whereby Mackin would favor the defendant with money through the vehicle of Olympus, and the defendant would favor Mackin and Olympus by using his influence in the rating or assessment of proposals and in program reviews within DOE. The evidence and the permissible inferences warranted this finding of a tacit agreement. Mackin and the defendant were joined by ties of professional association and friendship. It could be inferred that at some point each recognized that both could profit from their association; that Mackin desired contracts; that the defendant needed money; that an agreement was reached; and that when the defendant asked his friend for money, Mackin paid.

James Coffis, Mackin's nephew, also understood and placed the arrangement in true perspective when he wrote

"payoff" on Olympus' check. Mackin knew that the defendant possessed authority to pass on proposals submitted to the bureau, monitor projects as they progressed, and evaluate the ultimate products before final payments were made. Moreover, when Weagraff came to DOE in 1975, Mackin informed him that the defendant "worked for us," implying that the defendant used his position in DOE to further the financial interests of Mackin and Olympus.

The defendant's additional contention that the prosecution failed to demonstrate that the object of the conspiracy to steal involved property of the Commonwealth is unfounded. It could be inferred that the defendant's schemes to reward specific contractors, as exemplified by his dealings with the Cotting and Protestant Schools, utilized greatly inflated estimated costs that were funded with Commonwealth monies. It is also reasonably inferred that such methods would be duplicated in future Olympus contracts. Consequently, the conspiracy to steal reasonably had as its object the theft of Commonwealth property. Cf. *Commonwealth* v. *Leonard,* 352 Mass. 636, 644-646 (1967); *Commonwealth* v. *Abbott Eng'r, Inc.,* 351 Mass. 568, 571 (1967).

2. We next consider the defendant's contention that his conviction on the bribery indictment was not warranted in light of the so called Wharton's Rule. See R. Anderson, Wharton's Criminal Law and Procedure § 89 (1957). That rule provides "that an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as necessarily to require the participation of two persons for its commission." See *Commonwealth* v. *Favulli,* 352 Mass. 95, 108-109 (1967). We do not reach the issue of whether the rule is applicable in this Commonwealth, however, because the conspiracy here involves participants in addition to the two necessary to commit the substantive offense of bribery. See *id.* at 109. At a minimum, the evidence established the knowing participation of Coffis in addition to that of Mackin and Schoening. Thus, there were at least three parties to the

conspiracy,[4] and Wharton's Rule by its terms is inapplicable. *Id. Commonwealth* v. *Mannos,* 311 Mass. 94, 111 (1942).

3. The defendant argues that the Shuchatowitz and Mizar transactions constituted incompetent evidence. In general, evidence tending to show that a defendant committed crimes unrelated to the offense with which he is charged is competent where such evidence has a tendency to show a common scheme, *Commonwealth* v. *Stone,* 321 Mass. 471, 473-474 (1947); a pattern of operation, *Commonwealth* v. *Gettigan,* 252 Mass. 450, 459 (1925); absence of accident or mistake, *Commonwealth* v. *Snell,* 189 Mass. 12, 23 (1905); identity, *United States* v. *Woods,* 484 F. 2d 127, 135 (4th Cir. 1973), cert. denied, 415 U.S. 979 (1974); intent, *Commonwealth* v. *Bennett,* 118 Mass. 443, 453 (1875); and motive, *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 677 (1974). The defendant, however, stresses the lack of common end and the dissimilarity of method between the Shuchatowitz and Mizar transactions, on the one hand, and the Mackin transactions, on the other. These differences, he argues, preclude consideration of his participation in similar activities. We disagree. The defendant's use of his position to guarantee contracts to particular firms and thus to guarantee kickbacks to himself provided the common or general scheme underlying all three transactions. The fact that the Mizar transaction utilized a separate corporation as opposed to direct payments is inconsequential. See *Whiting* v. *United States,* 296 F.2d 512, 516 (1st Cir. 1961). Given the continuing nature of this conspiracy, the evidence under consideration possesses the requisite temporal and schematic nexus, *Commonwealth* v. *Stone, supra* at 473-474, to render it admissible to show intent, motive, and common scheme.

---

[4] The judge found that Weagraff was not part of any agreement with the defendant, and we do not disturb that finding. Nor do we reach the question of Olympus' participation in the conspiracy under *Commonwealth* v. *Beneficial Fin. Co., supra* at 280.

4. There is no merit to the defendant's final attack on the admissibility of the Mizar and Shuchatowitz transactions as substantive matters not presented to the grand jury. The defendant himself admits that these matters would not constitute "critical evidence" and thus would not require presentment to the grand jury if offered for no greater purpose than to show motive and intent. We have found the admissibility of the evidence to be so limited.

*Judgments affirmed.*