COMMONWEALTH vs. ELMER SYLVESTER.

Essex.  November 4, 1982. — April 13, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Fair trial, Comment by judge, Severance. *Judge.*

Intemperate and harassing comments made to defense counsel in the presence of the jury by the judge at a criminal trial, including interference with defense counsel's questioning of the defendant, deprived the defendant of a fair trial and thus required reversal of his convictions. [750-752]

In ordering a new trial of indictments charging the defendant with a number of similar sexual offenses against three victims between the ages of eight and fifteen, this court left the decision on joinder of the indictments for trial to the discretion of the trial judge. [753-758] O'CONNOR, J., expressed the view that on retrial the judge should not have discretion to deny a request of the defendant that the indictments involving different victims be tried separately. [761-763]

INDICTMENTS found and returned in the Superior Court Department on February 11, 1980.

The cases were tried before *Keating, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ellen A. Howard* (*Jane Kenworthy Lewis* with her) for the defendant.

*Dyanne Klein Polatin,* Assistant District Attorney, for the Commonwealth.

LYNCH, J.  The defendant appeals from two convictions of rape of a child under sixteen years of age, G. L. c. 265, § 23, and also appeals from three convictions of unnatural and lascivious acts on a child under sixteen years of age, G. L. c. 272, § 35A.  The jury acquitted the defendant of two counts each of rape and unnatural and lascivious acts on one of the three alleged victims.  The Appeals Court af-

firmed the judgments. *Commonwealth* v. *Sylvester*, 13 Mass. App. Ct. 360 (1982). We granted further appellate review. The defendant assigns as errors the judge's prejudicial comments made in the presence of the jury, denial of his motion for relief from prejudicial joinder, and improper and insinuating remarks made by the prosecutor during his opening statement. We conclude that the defendant must receive a new trial.

1. *Judge's comments in the presence of the jury.* The defendant contends that the judge's repeated "ridicule [of] defense counsel, threat[s] to cut off her argument, interrupt[ing] and question[ing] witnesses, and comment[s] on the evidence," for which he moved for a mistrial, demonstrated to the jury a bias against the defendant which "could not have been cured by the two sentences in the charge" instructing the jury not to be influenced by colloquies between the judge and counsel.[1] The defendant likens his trial to that in *Commonwealth* v. *Sneed*, 376 Mass. 867, 869 (1978), wherein we ordered a new trial "because the judge, in many and diverse ways, deprived the defendant of a fair and impartial jury trial." The Appeals Court (*S. C.*, *supra* at 365), considered the tone of the remarks in this case as more closely resembling that in *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846-849 (1980), a case involving the same trial judge. The Appeals Court, while critical of the judge's remarks, declined to find them so prejudicial as to warrant a reversal of the convictions.[2] We cannot agree.

---

[1] The judge included these remarks in his jury instructions: "[L]awyers being advocates, any colloquy, any give and take between the Court and any lawyer, either one, should never be considered by you in determining the guilt or innocence of this defendant. It would be improper for you . . . to try and assume because the Court may make a remark to this lawyer or that lawyer that the Court has a feeling or is trying to decide facts for you."

[2] A summary of the trial judge's comments is appended to this opinion as well as to the opinion of the Appeals Court, *S. C.*, 13 Mass. App. Ct. 360, 369-371 (1982). As that court noted, some "vitriolic remarks to defense counsel" were made during bench conferences, outside the hearing of the jury. *Id.* at 366 n.2. These remarks were not included in either appendix.

In *Fitzgerald,* there were "several personal observations in the course of the trial, not all of them directed against the defendant or his counsel. The judge was rightly concerned about the slow pace of the trial. His criticisms in some instances should have been made out of the presence of the jury. Other comments, however, were clearly warranted" (footnote omitted). *Id.* at 847. In the case before us, the overwhelming majority of his critical remarks were directed to defense counsel. Most of the remarks were made in the presence of the jury. Nearly all were disparaging of defense counsel's skill, and some had personal overtones. See *Jones* v. *Commonwealth,* 379 Mass. 607, 609-610 (1980). Defense counsel's conduct of the defense was characterized neither by ineptitude, *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 17 n.12 (1980), nor by antagonism toward the judge, *Commonwealth* v. *Lewis,* 346 Mass. 373, 379 (1963). Counsel objected steadfastly and respectfully, and painstakingly attempted to preserve her client's rights throughout the course of the trial. Compare *Commonwealth* v. *Fitzgerald,* 380 Mass. 840 (1980). We have recognized that "any judicial comment is likely to be accorded substantial weight by the jury." *Commonwealth* v. *Sneed,* 376 Mass. 867, 870 (1978), citing *Quercia* v. *United States,* 289 U.S. 466, 470 (1933). "[T]he particular danger created by such criticism in open court is the likelihood that it will 'impress the jury with the idea that [the judge] disfavors the attorney and, inferentially, the position the attorney represents.'" *Commonwealth* v. *Mosby, supra* at 17, quoting *State* v. *Pokini,* 55 Hawaii 640, 645 (1974). We think the judge's instruction that the jury should not consider "any give and take between the Court and any lawyer . . . in determining the guilt or innocence of this defendant" could not erase the pervasive impression that the judge disfavored the defense counsel. See *Commonwealth* v. *Sylvester,* 13 Mass. App. Ct. 360, 369 n.3, and 372 (Brown, J., concurring).

Equally as important, some of the judge's conduct interfered with counsel's ability to put on a full defense. Most

significantly, the judge excluded questions, put by defense counsel on redirect examination of the defendant, relating to why a neighbor had complained about him, the defendant's disposal of certain magazines, and his lack of contact with his own children. These matters had been raised on cross-examination and defense counsel had a right to rehabilitate her witness.[3] See *Commonwealth* v. *Ferreira*, 373 Mass. 116, 131 (1977), and cases cited. On another occasion the judge cut off an answer during direct examination of the defendant by saying: "I am not going to let you let him spill out narrative material here about self-serving statements about what he did in the police station. There is a way to try this case. Get to it." The testimony would not have been excludable merely on the ground that it was self-serving, see *Commonwealth* v. *Caldron*, 383 Mass. 86, 90 (1981), and the jury could well have concluded from the judge's remark that the defendant's testimony was not worthy of belief. Finally, the trial judge twice interrupted defense counsel during her closing argument to criticize her for commenting on the applicable law. One of his reprimands, before telling defense counsel, "Come over here," was: "If you don't get to the facts, I'm going to have you sit down, and you will waive your argument. Now, let's get to summarizing the facts." At the very least, this reaction to counsel's comments was unduly harsh and unnecessarily disruptive of her final argument.

Our examination of the defendant's claims of error, viewed in the context of the conduct of the entire trial, has convinced us that, in diverse ways, he was deprived of a fair and impartial trial. *Commonwealth* v. *Sneed*, 376 Mass. 867, 870 (1978).

---

[3] The judge told defense counsel that he would instruct the jury to disregard testimony elicited on cross-examination with respect to the neighbor's complaint and the defendant's children. The instruction was not forthcoming, and defense counsel did not object to its omission. Nevertheless, the instruction would have come too late, in our view. Testimony had already been admitted on cross-examination and excluded on redirect examination.

2. *Motion for relief from prejudicial joinder.* The defendant was indicted on one count of unnatural and lascivious acts on one alleged victim; one count of rape and one count of unnatural and lascivious acts on another alleged victim; and three counts of rape and three counts of unnatural and lascivious acts on the third alleged victim. Approximately six weeks before trial, the defendant moved to sever the indictments. This motion was not supported by an affidavit. See Mass. R. Crim. P. 9 (d) (2), 378 Mass. 859 (1979). The motion judge denied the motion, concluding that "it appear[s] from these representations [of counsel] that the alleged locus was identical, the criminal behavior alleged, the inducements and methods alleged to induce victims alleged to be of a common character . . . [are] within Rule 9 (a) (1)."[4] Defense counsel then filed a pretrial motion, supported by an affidavit, for relief from prejudicial joinder. The trial judge heard and denied that motion on May 9, 1980.

While the defendant's motion raised several issues,[5] on appeal his sole contention is that "joinder was 'not in the

____

[4]Massachusetts Rule of Criminal Procedure 9 provides in material part: "(a) JOINDER OF OFFENSES. (1) *Related Offenses.* Two or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.

"  .   .   .   .

"(d) RELIEF FROM PREJUDICIAL JOINDER. (1) *In General.* If it appears that a joinder of offenses or of defendants is not in the best interests of justice, the judge may upon his own motion or the motion of either party order an election of separate trials of counts, grant a severance of defendants, or provide whatever other relief justice may require."

"(2) *Motion by the Defendant.* A motion of the defendant for relief from prejudicial joinder shall be in writing and made before trial and shall be supported by an affidavit setting forth the grounds upon which any alleged prejudice rests, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known."

[5]The motion for relief from prejudicial joinder, with its supporting affidavit, raised five issues: (1) that joinder would not be "in the best interests of justice" and "would deny the defendant . . . a fair trial"; (2) "that the evidence regarding one alleged victim is not admissible to prove the in-

best interests of justice' because of the number and repulsive nature of the crimes charged." We agree with the Appeals Court that severance was not required on that ground, and we decline to adopt a rule that a special prejudice inheres in the joinder of sexual offenses, requiring that such indictments be tried separately in all circumstances. The decision not to allow the motion on this ground was, therefore, in the sound discretion of the trial judge. *Commonwealth* v. *Jervis*, 368 Mass. 638, 645 (1975), and cases cited. Since the issue is likely to come up on retrial an additional discussion of the motion under rule 9 is necessary.

In the case before us, the defendant was accused of committing sexual offenses between May 12, 1979, and December 31, 1979.[6] Two of the alleged victims were brothers and lived in the defendant's neighborhood. The third alleged victim lived in another part of the city but habitually visited the defendant's neighborhood. All of the offenses were alleged to have taken place in private, at the defendant's apartment. All of the alleged victims testified that they first met the defendant at a neighborhood store, where he helped out but received no wages. All of them were said to have

dictments regarding the other two alleged victims, without a demonstration that there is probative value amongst the indictments"; (3) "that a jury may use the evidence of these three distinct alleged incidents to impermissibly infer a criminal disposition to commit crimes of the nature alleged; from which they might impermissibl[y] infer [the defendant's] guilt of the crimes"; (4) "that a jury may cummulate [*sic*] the evidence of these unrelated alleged incidents; and erroneously corroborate the evidence in each alleged incident, which would not be done if the incidents were tried separately"; and (5) that "[l]atent feelings of hostility which are particularly acute in alleged crimes of this nature may create prejudice towards the defendant when many crimes or victims are alleged."

[6] The indictments relating to one victim covered the period between May 12, 1979, and December 31, 1979; two of the counts therein specified "divers dates and times between June 1, 1979 and December 31, 1979." The indictments relating to the other two victims specified one-month and four-month time frames, respectively, between September and December, 1979. The defendant has raised no question respecting the specificity of the charges. See *Commonwealth* v. *King*, 387 Mass. 464, 467-469 (1982).

been subjected to fellatio. All testified they were given money by the defendant. The alleged offenses and their circumstances were thus undoubtedly similar, if not identical, in major respects. However, they were not "related" within the meaning of Mass. R. Crim. P. 9 (a) (1), unless the judge could conclude that they arose "out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." *Id.*

In *Commonwealth* v. *Blow*, 362 Mass. 196, 200 (1972), we reviewed the guidelines to be employed in considering a motion to sever indictments. We said that joinder of indictments for a single trial is permissible when "several indictments charg[e] different crimes arising out of a single chain of circumstances"; or when "several offenses might have been joined in one indictment, and would be proved by substantially the same evidence, or evidence connected with a single line of conduct, and grow out of what is essentially one transaction, and where it does not appear that any real right of the defendant has been jeopardized." *Id.*, quoting *Commonwealth* v. *Rosenthal*, 211 Mass. 50, 54 (1912). The Commonwealth argues that "since the facts and circumstances surrounding each crime were relevant and logically probative to show a common course of conduct, motive and intent, evidence of each offense would have been admissible even if the charges had been severed." In support of this argument, the Commonwealth relies on our decision in *Commonwealth* v. *Gallison*, 383 Mass. 659 (1981). There, the defendant challenged the joinder of indictments for manslaughter of her daughter and assault and battery on her son. The "nub" of the defendant's appeal was that "trial of both indictments created a 'seepage . . . of evidence not otherwise admissible' against her." *Id.* at 672. We repeated the general rule that "evidence of other criminal behavior may not be admitted to prove the propensity of the accused to commit the indicted offense but it is admissible for other relevant probative purposes." *Id.* at 672. We held that evidence of abuse of the son "formed a temporal and schematic nexus with the treatment of [the daughter]

which rendered it admissible also to show a common course of conduct regarding the two children." *Id.* at 673. Evidence of the defendant's abuse and neglect of her son was probative of an element of manslaughter, i.e., her state of mind with respect to her daughter.

More recently, in *Commonwealth* v. *King,* 387 Mass. 464, 469-473 (1982), we held that evidence of oral sex and the use of a dog to perform sexual acts on the victim's younger brother "showed a common pattern or course of conduct toward the two children, and was sufficiently related in time and location to be logically probative." *Id.* at 472. In *King,* while the defendant had not been charged with sexual offenses against the victim's brother, "the uncharged conduct [was] closely related in time, place, age, family relationship of the victims, and form of the sexual acts." *Id.* We distinguished these factors from those in *Commonwealth* v. *Welcome,* 348 Mass. 68 (1964), where, in a prosecution of indecent assault and battery on a seven year old girl, evidence of unconnected prior sexual offenses with four and six year old girls was "not relevant to prove that the defendant was guilty of the crime for which he was indicted." *Id.* at 70. See also *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947) (in prosecution for rape of a child under fourteen, where defendant claimed to be impotent, evidence that he had fondled her older sister had the sole effect of showing "that the defendant was a lewd man, and to lead the jury to believe that a man of his character would be likely to commit the crimes charged. . . . [T]he evidence . . . had no tendency to show a lecherous disposition toward the younger child"). Contrast *Commonwealth* v. *Machado,* 339 Mass. 713 (1959) (sex offenses with same victim admissible to show the same inclination with respect to that victim).

In the case before us, where the defendant simply denied the charges, evidence of the other offenses would not bear on an essential element of the crime. Cf. *Commonwealth* v. *Gallison, supra.* Neither was there any issue respecting the particular factual circumstances. Compare *Common-*

*wealth* v. *Hollyer,* 8 Mass. App. Ct. 428, 430-431 (1979) (testimony by victim that he only spoke about the offenses to a young friend upon learning of similar offenses by the defendant with the friend, was probative on the issue of victim's long delay in reporting the incident). Here, the crimes charged were independent offenses. No question of identity was presented. None of the three alleged victims offered direct corroborative evidence of the commission of offenses against the other two. The Commonwealth argues, however, that in a separate trial on one of the indictments, evidence of the other offenses could have been admitted, in the discretion of the trial judge, to show a pattern of conduct by the defendant. It points out that the testimony of all the alleged victims tended to show that the manner of meeting the defendant, the locus of the charged offenses, and the method of reward were identical in every case. The offenses charged were substantially similar. The alleged victims were all between the ages of eight and fifteen, and the indictments charged contemporaneous offenses. See *Commonwealth* v. *King, supra* at 472 ("both children lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age . . . , and the form of sexual conduct . . . was similar"). The question of the admissibility of the evidence of the other criminal acts is not before us since there was no objection at trial nor was the question briefed or argued here. It should be understood that *Commonwealth* v. *King, supra,* and *Commonwealth* v. *Gallison, supra,* do not overrule *Commonwealth* v. *Welcome, supra,* and that the facts of this case go beyond those of *Commonwealth* v. *King.* There, both victims were members of the same family residing under the same roof, and the sexual conduct common to both incidents was even more bizarre (extremely young children of both sexes, and use of an animal) than that present here.

We point out, however, that the admissibility of evidence of other criminal acts is not dispositive of the question whether several indictments should be severed under Mass.

R. Crim. P. 9 (d). In considering the question, the judge must do more than to determine that the technical requirements of joinder under rule 9 are satisfied. Rather, the judge must decide the question in the context of the guarantee of a fair trial for every defendant. The determination of what will be in the "best interests of justice" requires weighing, in each case, the defendant's interests against judicial economy. If the judge determines that prejudice to the defendant would outweigh the interests of the court, the Commonwealth, and the public in a shortened adjudication, severance should be granted. See *Commonwealth* v. *Slavski*, 245 Mass. 405, 412-413 (1923). See also Reporters' Notes to Mass. R. Crim. P. 9 (d), Mass. Ann. Laws, Rules of Criminal Procedure at 135 (1979). Even if we assume the evidence of each criminal act to be admissible in each case the judge could still determine that undue prejudice would result from such evidence and from joinder of the indictments. We note, for example, that the indictment pertaining to one alleged victim, charging unnatural and lascivious acts, was joined with the other indictments charging rape of the other two alleged victims. This is a factor which, like any others, could be considered by the judge. On retrial, the judge will be free to consider all the circumstances anew.[7]

The judgments of the Superior Court are reversed. The verdicts are set aside.

*So ordered.*


APPENDIX.

(Bench Conference Remarks Not Included)

*Interchanges with Defense Counsel*

COUNSEL FOR THE DEFENDANT (on cross-examination): "Was it a lot of times . . . ?"

---

[7] Since there must be a new trial it is unnecessary for us to discuss this issue raised in regard to the prosecutor's opening statement, as the remarks objected to by the defendant are unlikely to be repeated at retrial.

THE WITNESS: "A — repeat that please."

THE JUDGE: "Is that helpful to the jury? A lot of times or a few times? It doesn't mean anything does it?"

.  .  .  .

COUNSEL FOR THE DEFENDANT (on cross-examination): "And how many times did you talk to Bob Reinertson?"

THE WITNESS: "I don't know. I can't remember."

COUNSEL FOR THE DEFENDANT: "Was it a lot of times? Just once?"

THE JUDGE: "He says yes [the witness had not]. How does that help the jury, a lot?"

.  .  .  .

THE JUDGE: "Do you object to what he said to him?"

COUNSEL FOR THE DEFENDANT: "Yes."

THE JUDGE: "All right. Go ahead, son. That's a new one."

.  .  .  .

THE JUDGE: "All right. I'm going to allow it. It is not harmful Ms. Lewis. This is how he got involved. I don't see how it hurts the defendant. There has got to be some point to your objections."

.  .  .  .

THE JUDGE: "No. I will let her have that."

COUNSEL FOR THE DEFENDANT: "Thank you very much."

THE JUDGE: "You don't have to thank me. I only do my duty."

.  .  .  .

COUNSEL FOR THE DEFENDANT: "Your Honor, I would expect that my next witness will have rather lengthy testimony, and may we adjourn at this time for lunch?"

THE JUDGE: "I'm not hungry at all. Proceed."

.  .  .  .

THE JUDGE: "Excluded. Next question. I suppose the jury can draw their own conclusions. Give them some credit, too, Ms. Lewis."

.  .  .  .

COUNSEL FOR THE DEFENDANT: "Your Honor, I am not offering it for hearsay purposes, but for the fact that the statement was made."

THE JUDGE: "I didn't know there was such a purpose, a hearsay purpose. No, I'll exclude it. Save your rights."

.  .  .  .

THE JUDGE: "I am going to exclude it."

COUNSEL FOR THE DEFENDANT: "Note the defendant's objection."

THE JUDGE: "I don't have to do that anymore. It is done by the reporter."

.  .  .  .

COUNSEL FOR THE DEFENDANT: "On June 26th, on your way to Lowell, did you receive some information about Wallie A.?"

THE JUDGE: "You know, Ms. Lewis, for a girl [*sic*] that objected all through to leading questions by the Government, I think they've been very patient with you, because you are testifying, and he's confirming what you say, and that is a classic definition of a leading question. Stop it. I'll note your objection and your exception. Now, start asking questions the way you should."

COUNSEL FOR THE DEFENDANT: "Would you note the defendant's objection again, Your Honor?"

THE JUDGE: "To what?"

COUNSEL FOR THE DEFENDANT: "To your comment, Your Honor, respectfully."

THE JUDGE: "Get a question to the witness."

. . . .

COUNSEL FOR THE DEFENDANT: "And what did you think you were being brought to the police station for?"

THE JUDGE: "Who cares? Excluded."

. . . .

COUNSEL FOR THE DEFENDANT: "Note the defendant's objection."

THE JUDGE: "Oh, yes. I will note your objection."

. . . .

THE JUDGE: "I am not going to let you let him spill out narrative material here about self-serving statements about what he did in the police station. There is a way to try this case. Get to it."

. . . .

COUNSEL FOR THE DEFENDANT: "Who came into the room — which of the three, Joey, Wallie or Louie came into the room?"

(No objection to the question by the Commonwealth)

THE WITNESS: "Joey B. . . . ."

THE JUDGE: "Is that terribly crucial or helpful to the jury?"

. . . .

THE JUDGE: "Is that his statement, or yours?"

COUNSEL FOR THE DEFENDANT: "I believe it *is* his, Your Honor."

THE JUDGE: "You mean you want him to adopt it? Go ahead."

. . . .

COUNSEL FOR THE DEFENDANT: "Did he ask for these magazines?"

[No objection made by the Commonwealth]

THE JUDGE: "Ms. Lewis, who cares? Will you get to the issue here which is the subject of these indictments."

. . . .

COUNSEL FOR THE DEFENDANT: "I would suggest, Your Honor, that Mr. McAlary [the prosecutor] has attempted to impugn the credibility of . . . ."

THE JUDGE: "I am excluding it. I am excluding it."


O'CONNOR, J. (concurring). I agree that the defendant did not receive a fair trial and that a new trial is appropriate. However, I do not believe that on retrial the judge should have discretion to deny a request of the defendant that the indictments involving different victims be tried separately.

Indictments involving one victim may not be joined with indictments involving another victim unless the evidence as to one victim would be admissible in a separate trial as to the other. *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981). *Commonwealth* v. *Blow*, 362 Mass. 196, 200 (1972). Here the evidence as to one victim should not be admissible in a separate trial as to the other victim.

Multiple offenses are alleged to have taken place at the defendant's apartment on different occasions involving several victims who claim to know the assailant from having met him at a neighborhood store. It is clear from these allegations that the identity of the alleged assailant will not be the critical issue at retrial. The court recognizes this. *Supra* at 757. It is equally clear that the assailant's state of mind will not be a contested issue. The critical issue at a separate trial for offenses against any one of the victims will be whether the alleged offenses against the victim actually occurred. Consequently, the question before this court is whether evidence of offenses against one child ought to be admitted at a trial for offenses against another child to show that the latter offenses occurred. The only possible relevance of evidence of offenses against one child on the issue whether offenses against another child actually occurred is its tendency to show that the defendant had a

disposition to commit sexual offenses against children. The arguable inference is that such a disposition makes it more likely that the crime was committed, and that the defendant committed it, than if the defendant did not have that disposition.

The admission of such evidence is unfairly prejudicial to the defendant because its marginal probative value on the question whether the offense occurred is far outweighed by the danger that a jury with that information will find him guilty without being satisfied beyond a reasonable doubt that the indicted offense occurred. See McCormick, Evidence § 188 (2d ed. 1972). This court has held many times, and it should continue to hold, that evidence of other crimes is inadmissible if its only relevance is to show a disposition to commit the indicted offense. *Commonwealth v. Gallison, supra* at 672. *Commonwealth v. Schoening,* 379 Mass. 234, 242 (1979). *Commonwealth v. Baker,* 368 Mass. 58, 85-86 (1975). *Commonwealth v. Murphy,* 282 Mass. 593, 598 (1933).

In *Commonwealth v. Welcome,* 348 Mass. 68 (1964), the defendant was tried for indecent assault and battery on a child under the age of fourteen. This court held that evidence that the defendant had assaulted other young girls was inadmissible to prove the defendant guilty of the crime charged. *Id.* at 70-71. The court states (*supra* at 755-756), that *Welcome* was not overruled by *Commonwealth v. King,* 387 Mass. 464 (1982), and *Commonwealth v. Gallison, supra,* but inexplicably it fails to follow *Welcome,* which is indistinguishable in any significant way from this case.

*Commonwealth v. Gallison, supra,* is not inconsistent with *Welcome.* In *Gallison,* this court held that evidence of other crimes was admissible, not to prove that the defendant committed the alleged criminal act, as the court would permit here, but to prove the defendant's state of mind as an element of manslaughter. *Id.* at 672.

In sum, the court's failure to require severance of the indictments against the defendant is inconsistent with the principles and specific holdings of its earlier cases. In this

respect, the court's decision follows only *Commonwealth* v. *King, supra.* In *King,* this court held that evidence of the defendant's sexual misconduct with the female victim's younger brother was admissible at the trial for an offense against the female victim. The evidence was held admissible to prove the defendant's commission of the alleged criminal act. There, I dissented on the ground that the holding "undermine[d], if it [did] not destroy, a time honored, salutary rule that '[f]airness to a defendant in a criminal case requires . . . that the commission by him of an independent crime cannot ordinarily be shown as evidence tending to show the commission of the crime charged.' *Commonwealth* v. *Stone,* [321 Mass. 471] 473 [1947]." *Commonwealth* v. *King, supra* at 479-480. I continue to believe that *King* was wrongly decided. The court's failure here to require severance on retrial, if severance is requested by the defendant, not only reconfirms, but also perhaps extends the holding of *King.* In concluding that evidence of another crime was admissible, in the trial judge's discretion, the court in *King* relied in part on the fact that "both children lived in the same house with the defendant." *Id.* at 472. In this case, the defendant and the alleged victims did not live in the same house. The court's failure to require severance further erodes the time-honored, salutary principle expressed in *Commonwealth* v. *Stone,* 321 Mass. 471 (1947).